**Nolan WILKES, Jr., Personal Representative of the Estate of Nolan Wilkes, Sr., deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97–1317–CIV–J–21–A.**

United States District Court, M.D. Florida, Jacksonville Division.

March 9, 1999.

James Edgar Cobb, Joel B. Toomey, David H. Peek, Peek, Cobb, Edwards & Ashton, P.A., Jacksonville, FL, for Nolan R. Wilkes, Jr., Personal Representative of the Estate of Nolan R. Wilkes, Sr., deceased, plaintiff.

Ronnie S. Carter, U.S. Attorney's Office, Jacksonville, FL, Bruce T. Russell, U.S. Dept. of Justice, Tax Division, Washington, DC, for USA, defendant.

## ORDER

NIMMONS, District Judge.

This cause comes before the Court on Plaintiff's Motion for Final Summary Judgment (Dkt.30) and Defendant's Opposition (Dkt.47) thereto; and Defendant's Motion for Summary Judgment (Dkt.39) and Plaintiff's Memorandum (Dkt.48) in opposition thereto; and Plaintiff's Request for Oral Argument (Dkt.37). This is an

action brought by Plaintiff Nolan Wilkes, Jr., as Personal Representative of the Estate of Nolan Wilkes, Sr., deceased, to recover certain estate taxes paid to Defendant United States of America, through the Internal Revenue Service.

## I. Background

In order to more coherently discuss the facts and legal arguments of this case it is necessary to review some provisions of the federal estate tax law.

### A. Legal Principles

#### 1. *Estate tax liability generally*

While other portions of the Internal Revenue Code ("IRC") and other federal laws have application, Chapter 11 of Subtitle B, Title 26, §§ 2001–2210, sets forth the primary federal estate tax laws. Section 2001,[1] entitled "Imposition and Rate of Tax," imposes a tax on the "transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001(a). Pursuant to § 2002, entitled "Liability for Payment," "the tax imposed by this chapter [i.e., 11] shall be paid by the executor." For purposes of Title 26, the Code defines the term "executor" to include the executor or administrator of a decedent's estate or, if no such person is appointed, any person in actual or constructive possession of any property of the decedent. *See* 26 U.S.C. § 2203.

Although § 2002 does not explicitly state the type (or types) of liability that it imposes, the applicable treasury regulation, caselaw, and other authority confirm that this section only imposes liability on an executor in his capacity as a representative of the estate. *See* Treas.Reg. § 20.2002–1 (1958); *see also, e.g., Leigh v. Commissioner*, 72 T.C. 1105, 1979 WL 3762 (1979)

(stating that Treas.Reg. § 20.2002–1 clarifies that 26 U.S.C. § 2002 only imposes liability in a representative capacity, and that personal liability only arises if 31 U.S.C. § 3713(b)[2] also applies); 5 Boris I. Bittker and Lawrence Lokken, *Federal Taxation of Income, Estates, and Gifts* ¶ 137.7.3 at p. 137–31 (1993) ("The executor (in a representative capacity) is primarily responsible for payment of the estate tax.") (citing, inter alia, § 2002 and Treas. Reg. § 20.2002–1).

#### 2. *Other bases of estate tax liability*

Although § 2002 imposes primary liability for payment of estate taxes upon the executor in his representative capacity, this does not mean that the IRS can only proceed against the executor in that capacity in seeking to collect any estate taxes. As described below, pursuant to various other provisions of the IRC, the IRS has alternative means by which to pursue the property of the estate and/or individuals holding such property for collection of any unpaid estate taxes.

First, if the estate tax imposed by Chapter 11 is not paid in full, it becomes a lien upon the gross estate for ten years from the date of the decedent's death. *See* 26 U.S.C. § 6324(a)(1). Second, if the estate tax is not paid in full when due but property of the decedent is transferred to another (including transferees, beneficiaries, and those in possession of gross estate property on the date of the decedent's death), then those transferees "shall be personally liable for such tax." *See* 26 U.S.C. § 6324(a)(2). Third, 31 U.S.C. § 3713(b) provides that an executor is personally liable if he pays any part of a debt of the decedent before he pays a claim of the United States, including estate tax liabilities. Fourth, § 6901(a)(1) provides a mechanism by which the liability imposed

---

**1.** Unless otherwise noted, all U.S.Code references in this Order will be to Title 26.

**2.** This section is discussed *infra* in part I.A.2.

by § 6324 can be asserted against transferees of property of a decedent, *see* § 6901(a)(1)(A)(ii), as well as fiduciaries, including executors, *see* § 6901(a)(1)(B) (expressly referencing 31 U.S.C. § 3713(b)).

To counterbalance the foregoing, § 2204, entitled "Discharge of fiduciary from personal liability," provides a means by which executors, fiduciaries, and others, can be discharged from personal liability upon making written application to the Secretary and complying with other particular requirements (including payment of the amount of tax of which they are notified and, as may be required, posting a bond). *See generally* § 2204. However, the Code provides that even a discharge of personal liability under § 2204 "shall not operate as a release of any part of the gross estate from the lien for any deficiency that may thereafter be determined to be due." *See* 26 U.S.C. § 6324(a)(3).

### 3. *Payment options for estates consisting largely of interests in a closely-held business*

In certain instances in which an interest in a closely-held business makes up a substantial portion of a decedent's adjusted gross estate, the executor of that estate may elect to pay part or all of the tax imposed by § 2001 in an equal number of installments. *See* 26 U.S.C. § 6166. When the executor makes such an election under § 6166, he can also take advantage of a 4 percent interest rate on a portion of the deferred tax. *See* 26 U.S.C. § 6601(j).

### B. Undisputed Facts

As noted, this is an action by Plaintiff Nolan Wilkes, Jr., ("Wilkes") as Personal Representative of the Estate ("Estate") of Nolan Wilkes, Sr., ("decedent") to recover certain estate taxes paid to Defendant United States of America through the Internal Revenue Service ("IRS"). Upon his death in 1988, decedent owned roughly 8300 shares of Suwannee Block and Building Material Company ("Suwannee Block"). Following decedent's death, Plaintiff, acting in his capacity as personal representative of the Estate, sold decedent's shares to Suwannee Block's Employee Stock Ownership Plan ("ESOP"). Plaintiff and ESOP structured that transaction in compliance with 26 U.S.C. § 2210, since repealed, which section provided that if an executor transferred employer securities to an employee stock ownership plan ("esop"), elected application of § 2210, and filed particular agreements, *see* § 2210(a)(1), (2),

> then the executor is relieved from liability for payment of that portion of the tax imposed by section 2001 which such employee stock ownership plan ... is required to pay under subsection (b).

*See* 26 § 2210(a)(3).

As set forth in the "Statement of Agreement by the Plan Administrator/Trustee and Assumption of Estate Tax Liability and Interest," attached to decedent's estate tax return (Dkt.33, Ex. D) (bearing Bates Stamp No. 000058), ESOP agreed, pursuant to § 2210(b), to assume the estate tax liability for the shares that it bought. And, as set forth in the "Statement of Guarantee by Employer," attached to decedent's estate tax return (Dkt.33, Ex. D) (bearing Bates Stamp No. 000059), Suwannee Block agreed, pursuant to § 2210(d), to guarantee ESOP's payment of the estate tax liability for the shares purchased by ESOP. Although § 2210(d) provides the Secretary with discretion to prescribe the manner in which this guarantee shall be backed (i.e., bond, etc.), it appears undisputed that no such backing of the guarantee was required in this case.

Following the transaction whereby Plaintiff sold the decedent's shares of Suwannee Block to ESOP, ESOP elected pursuant to the authorization provided by

§ 2210(c) to pay the portion of the estate tax that it had assumed pursuant to the installment plan provisions of § 6166 and the favorable interest rate of § 6601(j). *See, supra,* part I.A.2 (describing §§ 6166 and 6601(j)). Subsequently, Suwannee Block experienced financial problems, and ESOP thereafter defaulted on its obligation to pay the estate tax on the shares of Suwannee Block that it had purchased. With no bond or other backing of Suwannee Block's guarantee, the IRS was unable to collect from either Suwannee Block or ESOP the remaining tax liability that had been assumed by ESOP.

On September 14, 1992, the IRS issued to Plaintiff a Notice of Intent to Levy (Dkt.33, Ex. E), indicating its intent to levy on the assets of the Estate to collect the remaining unpaid tax owed by ESOP; subsequently subpoenaed Plaintiff (Dkt.33, Ex. H); and thereafter levied on assets of the Estate in the amount of $552,391.86 (Dkt.33, Ex.1). Plaintiff paid such tax and then filed a Claim for Refund (Dkt.33, Ex. K), which claim the IRS disallowed in full (Dkt.33, Ex. L). Plaintiff protested this disallowance (Dkt.33, Ex. M), and the IRS again disallowed the claim, stating that "The Estate is liable for the estate tax" (Dkt.33, Ex. N). Plaintiff thereafter instituted this suit seeking a refund of the taxes paid.

## II. Summary Judgment Standard

The Court will enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. On the issue of materiality, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

The movant bears the burden of establishing the absence of dispute over material facts. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir. 1993). In determining whether the party seeking summary judgment has met its initial burden, the Court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606 (11th Cir.1991). Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Reynolds,* 989 F.2d at 469.

If the moving party does not meet its burden, the motion for summary judgment will be denied. *Four Parcels of Real Property,* 941 F.2d at 1437. Where the moving party meets its initial burden, the burden shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608.

## III. Discussion

The parties agree that the primary issue is the extent of the discharge of liability provided by § 2210(a)(3), which purports to relieve the "executor" of "liability" for payment of that portion of the estate tax assumed by ESOP pursuant to § 2210. Plaintiff asserts that this section completely discharges both the executor and estate—to the extent the two are distinct—from liability for such tax, and thus that the IRS' only recourse is against Suwannee Block or ESOP. The Defendant maintains that § 2210 merely relieves the executor of personal, or perhaps representative, capacity liability for such tax but, in any event, does not relieve the Estate or others from secondary liability for the estate taxes.

A review of the record indicates that no issues of fact material to this question are in dispute and that the question presented

is strictly one of law: the proper reading of § 2210. Having examined the statutory language, the Court concludes that Plaintiff's reading of the statute is correct. Although not dispositive, the legislative history as well as instructions which the IRS issued to aid in the preparation of a form necessary to exercise of the § 2210 election are consistent with this reading.

## A. The Statutory Language

As noted above in part I.A., in normal instances the Code only imposes liability for the estate tax on an executor in his representative capacity. *See* § 2002. Only in instances in which the executor fails to pay estate tax that is due and owing—whether by preferring another creditor over the United States, *see* 31 U.S.C. § 3713(b), or simply by being in possession of property of the decedent as to which the estate tax was not paid, *see* 26 U.S.C. §§ 6324(a)(2), 6901(a)(1)—does an executor acquire personal liability for the estate tax. Of course, as also noted, Congress has made express provision whereby executors and others can be discharged from personal liability upon compliance with certain requirements. *See* § 2004(a), (b). Notably, § 2004 specifies the limited nature of the discharge that it provides, *see* § 2004(a) (referring expressly and only to "personal liability for any deficiency in tax"); further, § 6324(a)(3) explicitly states that a § 2204 discharge of personal liability does not operate to extinguish the lien provided by § 6324(a)(1), yet no portion of § 6324 excepts the operation of § 2210(a)'s release of the executor, *see* § 6324.

Now, as noted, § 2002, which is entitled "Liability for Payment," sets forth what the Code contemplates as the entity upon whom primary responsibility for the estate tax falls. As it existed in 1988, said section provided as follows:

> Except as provided in section 2210, the tax imposed by this chapter shall be paid by the executor.

26 U.S.C. § 2002 (1988). As it existed in 1988, § 2210 was entitled "Liability for Payment in Case of Transfer of Employer Securities to An Employee Stock Ownership Plan or a Worker–Owned Cooperative." And, as noted, this section provided that, upon proper compliance with its other provisions,

> the executor is relieved from liability for payment of that portion of the tax imposed by section 2001 which such employee stock ownership plan ... is required to pay under subsection (b).

26 U.S.C. § 2210(a)(3) (1988).

The plain meaning of § 2210(a)(3) is thus clear: said section relieves the executor of liability in his representative capacity for the estate tax liability assumed by an esop; relief of the executor in his representative capacity is relief of the estate. In drafting these statutes, it seems clear that when Congress intended to only allow a limited discharge of the executor while still maintaining other enforcement options (i.e., the § 6324(a)(1) estate tax lien), it explicitly so provided in the relevant statute. *See* § 2204(a), (b); § 6324(a)(3). In contrast, § 2210(a)(3) does not so delimit the discharge that it provides. Said section is thus reasonably read as providing a complete discharge of the executor, in his representative capacity, and thus the estate from the estate tax liability assumed by an esop pursuant to § 2210(b).

Other provisions of § 2210 are in harmony with this reading. For example, § 2210(c) provides that an esop which assumes a portion of the estate tax liability is permitted to utilize §§ 6166 and 6601, respectively, to pay that estate tax in installments and at the 4% interest rate. In setting forth a specific rule for calculation and application of § 6601, § 2210(c)(2) speaks of the entire § 2001 estate tax liability in terms of, on the one hand, "the portion ... for which the executor is liable" and, on the other hand, "the portion

... for which an employee stock ownership plan [esop] ... is liable." No other portion of the § 2001 estate tax is mentioned, nor is there a reference to any continuing (secondary) liability of the estate for the taxes assumed by the esop. The language of § 2210(c) is thus consistent with the understanding that § 2210(a) completely shifts to the esop liability for that portion of the estate tax that it agrees to pay.

Lastly, there is § 2210(d), the portion of § 2210 which probably best supports Plaintiff's position. As noted, this section requires an employer whose employees are covered by an esop that has entered into a § 2210 agreement with an estate to "guarantee (in such manner as the Secretary may prescribe) the payment of any amount such [esop] is required to pay under subsection (b) [of § 2210]." As also noted above, regarding estates that do not engage in a § 2210 transfer, if the executor fails to pay the estate tax as required by § 2002, the IRS has alternative methods for collecting, which methods include the personal liability of executors, transferees, and distributees, as well as the estate tax lien. *See, supra,* part I.A.2. When viewed in such light, it is clear that, when a portion of the estate tax liability is shifted to an esop pursuant to § 2210(a) & (b), § 2210(d) supplies a correlative secondary basis for the IRS to collect the estate tax should the esop default on its obligation. Section 2210(d) thus mirrors those secondary bases of collection otherwise available to the IRS should the person primarily responsible for payment of the estate tax—usually the executor—fail to pay that tax. It only makes sense for Congress to provide such an alternative secondary basis of liability for the estate tax if understood and intended for § 2210 to strip the IRS of the secondary bases of liability normally available.

## B. The Legislative History

In addition to their analysis of the statutory language, the parties have also relied upon the legislative history of § 2210 and, specifically, portions of a report by the Joint Committee on Taxation. *See* Joint Committee on Taxation, 98th Cong., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984. Because reading of the statutory language in pari materia makes clear the meaning of § 2210, the Court finds no need to resort to the statutory language for assistance in interpreting this section. Nevertheless, having reviewed the legislative history, the Court concludes that, while it leans in favor of Plaintiff's position, it does not definitively support either side. This is not infrequently the case, as legislative history is rarely prepared with a focus on the specific issues that are so often the subject of lawsuits. In any event, the relevant legislative history does not undermine the Court's confidence in the correctness of its reading of § 2210.

## C. The IRS Instructions for Form 706

Subsequent to the filing of the parties' summary judgment motions and responses thereto, Plaintiff filed its Motion to File Supplemental Authority (Dkt.54), which Defendant did not oppose, as stated in its Response (Dkt.56). By Order (Dkt.57) of March 1, 1999, the Court granted that motion and stated that in, considering the pending cross motions for summary judgment, the Court would also consider Plaintiff's supplemental authority as well as the counter-arguments thereto set forth in Defendant's Response.

The supplemental authority that the Plaintiff has proffered is the IRS' instructions for completing and filing Form 706, the Estate Tax Return Form ("Instructions"). Said Instructions contain the following:

Instructions for Part 3.—Elections by the Executor

\* \* \* \* \* \*

Line 5. "[esop]" election.—

If you properly make this election, part or all of the estate's estate tax liability ... will be assumed by an employee stock ownership plan [esop] ....

Plaintiff argues that this provision contradicts the Defendant's litigation position that § 2210 does not completely discharge the estate of liability for those taxes attributable to the shares sold to an esop pursuant to a § 2210 agreement. Defendant counters asserting (i) that instructions such as those proffered by Plaintiff have no legal effect, and (ii) that the substantive portions of Plaintiff's supplemental authority motion incorrectly characterize Defendant's litigation position as maintaining that § 2210 only relieves the executor of personal liability. As to the latter point, Defendant's correction of Plaintiff is appropriate—it would appear that Counsel for Plaintiff has inadvertently used the word "personal" when he meant to say "representative capacity." However, on the former point, it appears that Defendant has been somewhat disingenuous.

Defendant asserts that instructions to an IRS form cannot constitute applicable law, citing to *Zimmerman v. Commissioner,* 71 T.C. 367, 371, 1978 WL 3419 (1978) ("authoritative sources of Federal tax law are in the statutes, regulations, and judicial decisions and not in ... informal publications [of the IRS].") Notwithstanding its statement that only statutes, regulation, and judicial decisions are authoritative sources of federal tax law, the *Zimmerman* case and the authority cited therein deal only with taxpayers who sought to rely upon information contained in an IRS

pamphlet entitled "Your Federal Income Tax." *See Zimmerman,* 71 T.C. at 371. However, other cases dealing explicitly with the instructions to IRS Form 706, while not elevating them to the level of statutes, regulations, or judicial decisions, have given them substantially more weight than Defendant's reading of *Zimmerman* would allow. *See e.g., Estate of Merwin v. Commissioner,* 95 T.C. 168, 169, 180–81, 1990 WL 120054 (1990) (distinguishing between "directions," which are preprinted guidance and commands on face of Form 706, and "instructions," which are separate, supplemental guidance entitled "Instructions to Form 706"; holding that failure of taxpayer to comply with directions on Form or instructions specifically referred to on Form precluded relief from failure to make proper election under estate tax laws). Furthermore, general principles of equity dictate that the IRS should not be allowed to issue instructions for completing its forms and later disavow those instructions.

While the Instructions for Form 706 are generally consistent with Plaintiff's reading of the statutes, the Court concludes that, like the legislative history, they are not of such moment as to be dispositive.[3] Nevertheless, they give no reason for doubting the correctness of the Court's reading of § 2210.[4]

## IV. Miscellaneous Matters

### A. Form of Judgment

Counsel have communicated to the Court their desire that, should the Court grant summary judgment in favor of Plain-

---

**3.** First, the Instructions are clearly less authoritative than the legislative history which, in turn, must bow to the clear statutory language. Second, there is no indication in the record that the Plaintiff herein actually relied upon these Instructions in electing the operation of § 2210.

**4.** Given the resolution of the issue of interpretation of § 2210's language in favor of Plain-

tiff, the Court need not address the second issue raised by the parties: whether the IRS' actions in responding to the Plaintiff's Application for Taxpayer Assistance Order (Dkt.33, Ex. F) somehow precludes the IRS' subsequent efforts to collect the estate tax liability on which the ESOP defaulted.

tiff, they be given the opportunity to draft a stipulated form of final judgment for the Court's consideration. The Court agrees such would be advisable and, having determined that it is appropriate to enter summary judgment in favor of Plaintiff, will accept counsel's offer. The Court will thus direct counsel to confer and, by the deadline set forth below, file a joint status report along with a stipulated form of final judgment, if counsel can agree on one. If counsel are unable to agree, the Court will take the matter up again at that time.

### B. Plaintiff's Motion to Amend Complaint

Plaintiff has also filed its Motion to Amend Complaint (Dkt.51), by which he seeks leave to amend his complaint to assert a claim for attorney's fees. That motion was filed on February 16, 1999; Defendant's Response thereto was just filed on March 2, 1999. As resolution of that motion will not affect the Court's disposition of the subject motions for summary judgment, such motion will be addressed by subsequent Order of the Court.

Upon consideration of the foregoing, it is hereby **ORDERED:**

1. Plaintiff's Request for Oral Argument (Dkt.37) is **DENIED.**

2. Plaintiff's Motion for Final Summary Judgment (Dkt.30) is **GRANTED.**

3. Defendant's Motion for Summary Judgment (Dkt.39) is **DENIED.**

4. The Clerk shall not enter judgment herein until directed to do so by Order of this Court.

5. As hereinabove provided, Counsel for the parties are **DIRECTED** to confer regarding the form of a judgment and, *on or before March 29, 1999,* to file a joint status report, along with a stipulated form of final judgment upon which they have been able to agree.

6. The case is **REMOVED** from the Court's April 1999 Trial Calendar.