[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 22, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-16614

_____

D. C. Docket No. 97-01317-CV-J-21A

NOLAN R. WILKES, JR., Personal
Representative of the Estate of
Nolan R. Wilkes, Sr., deceased,

Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 22, 2002)**

Before ANDERSON, Chief Judge, HULL and FAY, Circuit Judges.

PER CURIAM:

The government appeals from the district court's award of attorneys' fees to

the Wilkes Estate. The primary issue on appeal[1] is whether the district court abused

its discretion making the award, concluding that the government's position in the

underlying estate tax case was lacking in substantial justification pursuant to 26

U.S.C. § 7430(c)(4)(B). We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Nolan Wilkes, Sr. ("decedent") died testate on October 26, 1988. A large

portion of his estate consisted of 8,327 shares of stock in Suwannee Block and

Building Materials Company, which comprised 87% of the total shares; the other

13% were owned by Nolan Wilkes, Jr., the son and executor. The decedent also

owned some real property that was used by Suwannee. After the decedent died, the

executor agreed to sell the shares to an employee stock ownership plan ("ESOP")

created for Suwannee's workers. The sale took place on June 30, 1989. The total

tax liability was $515,663.

The executor elected to have the provisions of IRC § 2210 apply,[2] which

---

[1] We reject the government's law of the case argument. See United States v. Jones, 125 F.3d 1418 (11th Cir. 1997). We also reject the government's argument on appeal relating to the proceedings with respect to a technical assistance order. The district court did not abuse its discretion in this regard, either in construing the government's argument below as an argument that the estate had protracted proceedings, or in rejecting that argument.

[2] 26 U.S.C. § 2210. References in this opinion to particular statutory sections, without an indication of the title number, are references to the Internal

provided that the executor was relieved of liability for a certain portion of the taxes owed by the estate if an ESOP bought the employer securities and agreed to pay that portion of the estate tax liability.[3] The estate paid $168,000 in estate tax when the return was filed. The ESOP agreed to pay the remaining amount of estate tax, $347,000. Pursuant to the relevant statutes, an appropriate election was made to pay this $347,000 in annual installments over a ten-year period, beginning in July 1994. The problems giving rise to this litigation occurred because the ESOP did not pay any of the installments and guarantor Suwannee was similarly unable to pay.

After the ESOP defaulted, the IRS attempted to collect the unpaid balance of the tax from the estate. In September 1992, the estate filed an Application for Taxpayer Assistance Order ("TAO") to Relieve Hardship (Form 911), seeking an abatement of collection. In November 1992, the IRS responded to the TAO application and advised that the "enforcement of collection will be directed to the ESOP." However, the IRS later learned that the ESOP and Suwannee (the guarantor of the debt) could not pay the outstanding taxes. The IRS then pursued payment from the estate.

---

Revenue Code, Title 26.

[3] Section 2210 was repealed with respect to estates of decedents dying after July 12, 1989.

The estate paid the outstanding tax liability of $552,391.86 and the IRS

denied the administrative refund claim filed by the estate and its subsequent protest.

The estate filed suit in the district court on November 7, 1997.  Both parties filed

motions for summary judgment.  The estate argued that the discharge of the

executor under § 2210(a) discharged the executor in his representative capacity, i.e.,

discharged the estate.  The government argued that § 2210 merely discharged the

executor's personal liability, and that the estate itself remained liable.

In the underlying estate tax litigation, the district court granted the estate's

motion for summary judgment, holding that § 2210 provided a discharge of the tax

liability of the executor in his representative capacity, i.e., a discharge of the estate.

Wilkes v. United States, 50 F. Supp.2d 1281 (M.D. Fla. 1999).  The estate filed a

motion for attorneys' fees pursuant to § 7430,[4] arguing that the government's

position lacked substantial justification.  Following the recommendation of the

magistrate judge, the district court awarded attorneys' fees for the trial work.  The

government filed this appeal.

## II.  SUBSTANTIAL JUSTIFICATION

The issue before us is whether the district court abused its discretion in

---

[4]     While that motion was pending before the district court, the government appealed the judgment granting summary judgment against the government.  This Court summarily affirmed.

4

awarding fees, holding that the government's position in the underlying litigation lacked substantial justification. Section 7430 authorizes the award of attorneys' fees to private parties who prevail "[i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty." 26 U.S.C. § 7430(a).[5] Prevailing party status is among the several conditions for eligibility for

---

[5] 26 U.S.C. § 7430 provides, in relevant part:

(a) In general. – In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for ---

(2) reasonable litigation costs incurred in connection with such court proceeding.

...

(c) Definitions. – For purposes of this section ---

...

(4) Prevailing party. --

(A) In general. – The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved) --

(i) which –
(I) has substantially prevailed with respect to the amount

an award of fees.  With respect to the instant award of attorneys' fees to the estate,

the government challenges only certain aspects of the estate's prevailing party

status.  The government's primary argument[6] is that the estate cannot be a

> in controversy, or
>> (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and
>
> (ii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the requirements of section 2412(d)(2)(B) of such title 28 (as so in effect).
>
> [(iii) Redesignated (ii)]
>
> (B) Exception if United States establishes that its position was substantially justified –
>
>> (i) General rule. – A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

[6]    The government also challenges the estate's status as a prevailing party, arguing that the estate does not satisfy the net worth requirement.  The relevant statutes provide that the only estates eligible to apply for and receive attorneys' fees from the government when the government's position lacks substantial justification are estates having a net worth of less than $2 million at the date of death.  See 26 U.S.C. § 7430(c)(4)(A)(ii); 28 U.S.C. § 2412 (d)(2)(B).   The district court held that the instant estate qualified.  The government challenges this conclusion on appeal, indicating that the issue is whether net worth should be measured on the basis of fair market value of the estate's property at the date of death or whether it should be measured on the basis of the decedent's acquisition

6

prevailing party because the government's position in the underlying litigation was substantially justified. The court below and the arguments of the parties on appeal focus on the appropriate interpretation of the language of § 2210 providing that: if the executor transfers employer securities to an ESOP, and if the executor makes the appropriate election and appropriately files the agreement of the ESOP to pay, (§ 2210(e)), and the agreement of the employer to guarantee such payment, (§ 2210(d) and (e)), then "the executor is relieved of liability for the payment of that

---

costs. Because of the peculiar circumstances of this case, we decline to decide that question or to make precedent with respect thereto. In the district court, the government conceded that the appropriate measure was acquisition costs, arguing, however, that the relevant acquisition cost was that of the estate. In other words, the government argued that the estate is an entity separate from the decedent, that it "acquired" the stock from the decedent at the date of death at fair market value, noting that the estate does receive a basis which is stepped up to fair market value as of the date of death. However, on appeal, the government has abandoned the argument that the estate's acquisition cost controls. Rather than make law under these circumstances, and lacking adequate briefing, we decline to resolve the legal issue and make binding precedent. Rather, we accept the government's concession in the district court that acquisition costs rather than fair market value is the proper measure. We note that the district court also accepted this concession. Because the government has abandoned on appeal any argument that the estate has an acquisition cost separate and independent from that of the decedent, a concession we also accept, we are left with no feasible acquisition cost other than that of the decedent. On the basis of these concessions, and not on the basis of a resolution of the legal issues, the instant estate satisfies the net worth requirement and is eligible to apply for and receive attorneys' fees from the government upon satisfaction of the other conditions.

portion of the tax ... which such ... [ESOP] is required to pay under ... [§ 2210(b).]"[7]

---

[7]      Section 2210 provided in relevant part:

(a) In general.--If--
>    (1) employer securities--
>    >    (A) are acquired from the decedent by an employee stock ownership plan or by an eligible worker-owned cooperative from any decedent,
>    >    (B) pass from the decedent to such a plan or cooperative, or
>    >    (C) are transferred by the executor to such a plan or cooperative,
>
>    (2) the executor of the estate of the decedent may (without regard to this section) make an election under section 6166 with respect to that portion of the tax imposed by section 2001 which is attributable to employer securities, and
>
>    (3) the executor elects the application of this section and files the agreements described in subsection (e) before the due date (including extensions) for filing the return of tax imposed by section 2001,

then the executor is relieved of liability for payment of that portion of the tax imposed by section 2001 which such employee stock ownership plan or cooperative is required to pay under subsection (b).

(b) Payment of tax by employee stock ownership plan or cooperative.--
>    (1) In general.-An employee stock ownership plan or eligible worker-owned cooperative--
>    >    (A) which has acquired employer securities from the decedent, or to which such securities have passed from the decedent or been transferred by the executor, and
>    >    (B) with respect to which an agreement described in subsection (e)(l) is in effect,

shall pay that portion of the tax imposed by section 2001 with respect to the taxable estate of the decedent which is described in paragraph (2).

>    (2) Amount of tax to be paid.- The portion of the tax imposed by section 2001 with respect to the taxable estate of the decedent that is referred to in paragraph (1) is equal to the lesser of --
>    >    (A) the value of the employer securities described in subsection (a)(l) which is included in the gross estate of the decedent, or

8

(B) the tax imposed by section 2001 with respect to such taxable estate reduced by the sum of the credits allowable against such tax.

(c) Installment payments.--
    (1) In general.--If–
        (A) the executor of the estate of the decedent (without regard to this section) elects to have the provisions of section 6166 (relating to extensions of time for payment of estate tax where estate consists largely of interest in closely held business) apply to payment of that portion of the tax imposed by section 200 I with respect to such estate which is attributable to employer securities, and
        (B) the plan administrator or the cooperative provides to the executor the agreement described in subsection (e)(1),
    then the plan administrator or any authorized officer of the cooperative may elect, before the due date (including extensions) for filing the return of such tax, to pay all or part of the tax described in subsection (b)(2) in installments under the provisions of section 6166.

. . .

(d) Guarantee of payments.-Any employer-
    (1) whose employees are covered by an employee stock ownership plan, and
    (2) who has entered into an agreement described in subsection (e)(2) which is in effect,
and any eligible worker-owned cooperative shall guarantee (in such manner as the Secretary may prescribe) the payment of any amount such plan or cooperative, respectively, is required to pay under subsection (b).

(e) Agreements.-- The agreements described in this subsection are as follows:
    (1) A written agreement signed by the plan administrator, or by any authorized officer of the eligible worker-owned cooperative, consenting to the application of subsection (b) to such plan or cooperative.
    (2) A written agreement signed by the employer whose employees are covered by the plan described in subsection (b) consenting to the application of subsection (d).

. . .

(g) Definitions.-For purposes of this section-
    (1) Employer securities.-The term "employer securities" has the meaning given such term by section 409(1).
    (2) Employee stock ownership plan.-the term "employee stock ownership plan" has the meaning given such term by section 4975(e)(7).

The district court held that the term "executor" in the phrase "the executor is relieved of liability" refers to the executor in his representative capacity. The district court held: "The plain meaning of § 2210(a)(3) is thus clear: said section relieves the executor of liability in his representative capacity for the estate tax liability assumed by an ESOP; relief of the executor in his representative capacity is relief of the estate." 50 F. Supp.2d at 1285. We summarily affirmed the district court.

The correct interpretation of the statute having been thus established, the issue before us is whether the district court, adopting the magistrate judge's Report and Recommendation, abused its discretion in awarding fees, holding that the government's contrary interpretation was lacking in substantial justification. A position that is "substantially justified" is one that is justified to a reasonable degree that could satisfy a reasonable person or that has a reasonable basis in both law and fact. In re Rasbury, 24 F.3d 159 (11th Cir. 1994) (relying upon Pierce v.

---

. . .

(4) Plan administrator.-the term "plan administrator" has the meaning given such term by section 414(g).
(5) Tax imposed by section 2001.- The term "tax imposed by section 2001" includes any interest, penalty, addition to tax, or additional amount relating to any tax imposed by section 2001.

10

Underwood, 487 U.S. 552, 108 S. Ct. 2541 (1988)).

We review the district court's determination with respect to substantial justification for abuse of discretion. Rasbury, 24 F.3d at 165-68. This remains true even when the determination of substantial justification turned purely on a legal question. Id. at 166, 168. The abuse of discretion standard contemplates a range of choice as long as the choice does not constitute clear error. Id. at 168.

We conclude that the district court did not abuse its discretion. The court below properly focused on the language of the statute itself. The crucial language is: "The executor is relieved of liability for the payment of that portion of the tax ... which such ... [ESOP] is required to pay." § 2210(a). The natural and ordinary meaning of the term "executor" refers to the executor in his representative capacity, which is the equivalent of the estate itself. This is especially true in the context here, namely the context of who shall pay the estate tax – i.e., who is liable for such payment. Section 2002 expressly provides that the executor shall pay the estate tax.[8] It is a matter of common experience and clear from related provisions of the statute and regulations that § 2002 refers to the executor in his representative capacity. Related provisions indicate that the executor is personally liable only in

_____

[8]     Indeed, as noted below, § 2002 expressly provides that in circumstances such as involved here, the ESOP, and not the executor, shall pay the tax.

11

specified circumstances, e.g., preference of another creditor over the debt to the government for the tax or distribution to the legatees without paying the tax. See 31 U.S.C. § 3713. Indeed, the regulation accompanying § 2002 clarifies that the executor only becomes personally liable for the estate tax in certain circumstances. Treas. Reg. § 20.2002-1 (2002).

Moreover, the language and structure of § 2210 and related provisions contemplate a substitution of the ESOP for the estate, with respect to the payment of a certain portion of the tax – i.e., a substitution and not merely the addition of a primary obligor, leaving the estate with a secondary liability. When the ESOP agrees to pay a certain portion of the tax, § 2210(e), then the executor is relieved of liability for the payment of that portion of the tax. § 2210(a). That this is a substitution of liability is reinforced by § 2210(d), providing that the employer shall guarantee the agreement to pay by the ESOP. The guarantee shall be "in such manner as the Secretary may proscribe." § 2210(d). Thus, the IRS has discretion to require security for the guarantee, further indicating that there has been a substitution of liability and not merely the addition of a primary obligor, leaving the estate with a secondary liability. This substitution of the ESOP for the executor with respect to liability for the payment of the tax is indicated even more clearly by the language of § 2002, the very provision which in the first place imposes upon the

12

executor the duty to pay the tax. In its entirety, § 2002 reads:

> Except as provided in the section 2210, the tax imposed by this chapter shall be paid by the executor.

26 U.S.C. § 2002. In other words, no duty to pay the tax is imposed on the executor in the first place to the extent that the provisions of § 2210 apply.

It is also apparent from related provisions that Congress knows how to provide for a discharge of liability, leaving other entities secondarily liable. For example, § 2204(a) provides a mechanism by which the executor, after payment of the tax, can be discharged from personal liability. However, the relevant statutes expressly provide that the discharge of the executor's personal liability does not extinguish the lien provided by § 6324(a)(1) upon the property of the estate. § 6324(a)(3).[9]

The government argues that until this case there was a lack of case law touching on the issue of whether the statutory language relieving the "executor" of liability relieved the executor in his representative capacity or only in his personal capacity. Thus, the government argues that the issue is one of first impression, and therefore this case is not an appropriate one for concluding that the government's

---

[9] We have no occasion in this case to consider whether or not the lien upon the assets of the estate provided for in § 6324(a)(1) might have provided a basis for imposing liability in this case. The government makes no such argument on appeal, and we therefore deem any such argument to have been waived.

position lacks substantial justification. However, in view of the fact that all of the above mentioned considerations of statutory construction point clearly to the interpretation that the term "executor" refers to the executor in his representative capacity, and in view of the fact that the government has advanced on appeal[10] only the mere possibility that the term "executor" could mean personal capacity without advancing any plausible reasons why it should have that meaning, we cannot conclude that the district court abused its discretion in holding that the government's position lacked substantial justification. See also Nalle v. CIR, 55 F.3d 189, 193 (5th Cir. 1995) (indicating that there is no per se rule that an award of fees under § 7430 can never be appropriate in the context of an issue of first impression, citing as an example a statute with clear and unequivocal language).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[10] In addition, the government also argues on appeal that there is a difference between the executor and the estate. However, the government does not explain how that difference is relevant to this case, or supports its interpretation that §2210(a) relieves the executor of liability only in his personal capacity.