[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15251

_____

D.C. Docket No. 2:17-cr-00508-WKW-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER JASON HENRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 21, 2021)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and ANTOON,[*]
District Judge.[1]

GRANT, Circuit Judge:

_____

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting
by designation.

[1] The United States petitioned for rehearing or rehearing en banc after issuance of our opinion of
August 7, 2020. We grant the motion for panel rehearing, vacate our earlier opinion, and
substitute in its place the following opinion.

Christopher Henry was sentenced to 108 months in prison after pleading guilty to a charge of felon in possession of a firearm. He now challenges that sentence as unreasonable, arguing that the district court erred by imposing a term of imprisonment that was simply too long under the circumstances and by failing to adjust his sentence under United States Sentencing Guidelines Manual § 5G1.3(b)(1) for time served on an undischarged term of state imprisonment. Henry contends that § 5G1.3(b)(1), unlike other guidelines, is fully binding on district courts even after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

Both of Henry's challenges fail. The Sentencing Guidelines, though they are the starting point for all federal sentencing decisions, are no longer mandatory in whole, or even in part. The district court needed to consider § 5G1.3(b)(1) when determining Henry's initial Guidelines recommendation, but after that was free to exercise its discretion to impose the sentence that seemed most appropriate. And the choice the court made here was reasonable under the circumstances. Because any error in how the district court considered § 5G1.3(b)(1) was harmless and because the final sentence it chose was substantively reasonable, we affirm.

## I.

In one of a string of robberies, Henry broke into a business and stole eight firearms. Police arrested him a few days later. When questioned, he admitted to breaking into the shop and stealing the guns. He also told the investigators that they could enter his residence; once inside, they found many stolen items from his recent crimes, including one of the shotguns taken from the shop.

2

Henry pleaded guilty to burglary in state court and was sentenced in early 2017 to 20 years' imprisonment. A few months later, a federal grand jury indicted Henry on one count, felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Henry was of course still serving his 20-year state sentence, so the United States obtained a writ of habeas corpus *ad prosequendum* from the district court directing the county jail to deliver him for prosecution on the pending federal charge. Henry entered federal custody and pleaded guilty to the felon-in-possession charge.

A probation officer prepared a presentence investigation report using the United States Sentencing Guidelines. The report assigned Henry a total offense level of 27 and a criminal history category of VI—the highest possible category—resulting in an advisory guideline range of 130 to 162 months' imprisonment. But because the maximum term of imprisonment for a violation of § 922(g)(1) is 120 months, that maximum became the advisory guideline "range" and was as high as Henry's sentence could go. *See* 18 U.S.C. § 924(a); U.S. Sentencing Guidelines § 5G1.1(a) (Nov. 2016).

At sentencing, Henry requested that his federal sentence run concurrently with his state sentence, and that the court adjust his federal term downward for the time he had already served on the state sentence. That second request was based on § 5G1.3(b)(1), which states that if a defendant is serving an undischarged term of imprisonment resulting from "another offense that is relevant conduct to the instant offense of conviction," the sentencing court "shall adjust the sentence for any period of imprisonment already served on the undischarged term of

3

imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." U.S.S.G. § 5G1.3(b)(1). In plain English, the guideline instructs that if the defendant is still serving time in state prison for conduct that was also part of the federal offense, the time already served on that state charge should be credited against the federal sentence. At the time of sentencing, Henry had already served 24 months on his state sentence for burglary, so he argued that the 120-month advisory range—the statutory maximum—should be reduced by 24 months under § 5G1.3(b)(1) to yield a Guidelines recommendation of 96 months' imprisonment. He also asked the court to vary downward from that recommendation and sentence him to 60 months' imprisonment in light of the 18 U.S.C. § 3553(a) factors.

The government agreed that the federal and state sentences should run concurrently but argued that the 24-month adjustment under § 5G1.3(b)(1) should be made to the initial 130- to 162-month advisory guideline range that was calculated before the court recognized the 120-month statutory maximum. That procedure would have yielded a revised range of 106 to 138 months. The government then urged the court to impose a 120-month sentence—even after the § 5G1.3(b)(1) reduction—because Henry had repeatedly carried a firearm while committing burglaries.

The district court chose a third path. It imposed a sentence of 108 months to run concurrently with the remainder of Henry's state sentence. The court explained that it had "evaluated the reasonableness of a sentence through the lens of Section 3553" and that this sentence was "sufficient, but not greater than

4

necessary, to comply with the statutory purposes of sentencing." After Henry asked whether that sentence included a 24-month reduction under § 5G1.3(b)(1) from the adjusted range proposed by the government, the court indicated that it did not. In explaining that decision, the court gave more detail:

> I'm giving the sentence under all the circumstances. To the extent that I didn't give him credit for the relevant conduct from the 120 down, that would be an upward variance. But I am also giving him credit for a concurrent sentence, which I don't give many of. So 108 is my judgment of a fair sentence under all the circumstances in this case.

Henry objected, but without success. He now appeals his sentence.

## II.

We review an interpretation of the Guidelines de novo. *United States v. Whyte*, 928 F.3d 1317, 1327 (11th Cir. 2019). And we review all sentences under a deferential abuse-of-discretion standard. *United States v. Johnson*, 803 F.3d 610, 618 (11th Cir. 2015).

## III.

Henry argues that § 5G1.3(b)(1) is binding on sentencing courts whenever its requirements are met—even after the Supreme Court's holding in *United States v. Booker* that the Guidelines are advisory. *See* 543 U.S. 220 (2005). To square his argument with *Booker*, Henry contends that its holding only covers guidelines that go into the calculation of the "sentencing range" but does not extend to provisions like § 5G1.3(b) that affect what "kind of sentence" a court might impose. We disagree. It does not matter whether § 5G1.3(b) affects the kind of sentence or the guideline range; *Booker* told us that all guidelines are advisory.

5

And because the district court considered the proposed applications of § 5G1.3(b)(1) urged by both the government and Henry and stated that it would have imposed the same sentence even if Henry's proposed approach applied, any error by the district court regarding the § 5G1.3(b)(1) adjustment was harmless.

A.

Before the United States Sentencing Guidelines were implemented, district courts had almost total discretion to impose a sentence within the statutory minimum and maximum for a given crime. That led to what many saw as unwarranted disparities between sentences. In response to that concern and others, Congress passed the Sentencing Reform Act of 1984, which established the United States Sentencing Commission and directed that body to create the Guidelines. *See* Pub. L. No. 98-473, 98 Stat. 1987. The new law cut off much of the district courts' discretion over sentencing because the Act required courts to "impose a sentence of the kind, and within the range" established by the Guidelines. 18 U.S.C. § 3553(b)(1). Simply put, the Guidelines were mandatory: they imposed "binding requirements on all sentencing judges." *Booker*, 543 U.S. at 233.

That system, however, did not last. Because the Guidelines required *judges* to make factual findings to determine the appropriate sentence, defendants could be sentenced to higher prison terms based on information not admitted by them or found by a jury. But those determinations were inconsistent with the Supreme Court's earlier holding that any fact besides a prior conviction "which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to

6

a jury beyond a reasonable doubt." *Id.* at 244 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).  That meant trouble for the Guidelines.

The Supreme Court held in *Booker* that this mandatory system was inconsistent with the Sixth Amendment.  *Id.*  To bring the Guidelines in line with that amendment, the Court held that the entirety of 18 U.S.C. § 3553(b)(1)—the provision that required courts to "impose a sentence of the kind, and within the range" directed by the Guidelines—must be "severed and excised" from the Act. *Id.* at 245.  The Court explained that the Act, as passed, created a mandatory Guidelines system, but that in light of its Sixth Amendment holding that choice was not open to Congress.  *Id.* at 265.  The Guidelines could stay, but by severing the "provision of the federal sentencing statute that makes the Guidelines mandatory," the Court established that they are "effectively advisory."  *Id.* at 245. And in so doing, *Booker* restored much of the district courts' traditional sentencing discretion.

Still, the Guidelines are not irrelevant.  After *Booker*, a sentencing court must "consult those Guidelines and take them into account when sentencing"— what we have described as establishing the "procedural reasonableness" of a sentence—but the Guidelines are no longer the final consideration.  *Id.* at 264; *see also United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009).  Instead, a district court now has the freedom to "tailor the sentence in light of other statutory concerns," and a judge can choose an outside-Guidelines sentence so long as the judge has considered, and the sentence reflects, the factors outlined in § 3553(a): the nature and circumstances of the crime, the need for the sentence imposed, the

7

kinds of sentences available, and the like. *Booker*, 543 U.S. at 245. So while many guidelines use the terms "must" or "shall," that language simply requires courts to properly consider them when deciding the advisory Guidelines recommendation—it does not render them mandatory when imposing the final sentence. *See Sarras*, 575 F.3d at 1209 n.22.

The Supreme Court's later cases confirm the same point. In *Kimbrough v. United States*, the Court explained that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." 552 U.S. 85, 90 (2007). It held that sentencing courts are not bound to enforce a provision of the Guidelines related to cocaine charges, confirming that "the cocaine Guidelines, *like all other Guidelines*, are advisory only." *Id.* at 91 (emphasis added); *see also id.* at 113 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."). And in *Gall v. United States*, when the Court was tasked with reviewing the reasonableness of a sentence that fell far below the advisory guideline range, the Court reemphasized that *Booker* had "invalidated" the statutory provision "which made the Sentencing Guidelines mandatory." 552 U.S. 38, 46 (2007). As a result of that decision, "the Guidelines are now advisory." *Id.*

Our Circuit has not left this principle in doubt. As we announced shortly after *Booker*, "all guidelines decisions are now advisory." *United States v. Magluta*, 418 F.3d 1166, 1185 (11th Cir. 2005). We have regularly corrected litigants who "fail[] to appreciate the advisory nature of *every provision* of the

8

guidelines." *Spencer v. United States*, 773 F.3d 1132, 1141 (11th Cir. 2014) (en banc) (emphasis added). And when we rejected the idea that "all misapplications of the advisory guidelines" necessarily result in a "complete miscarriage of justice," we grounded our conclusion in the fact that "the guidelines are advisory." *Id.* at 1140. In one of our many opinions affirming an outside-Guidelines sentence as reasonable, we again emphasized their advisory nature: "the guidelines and their application provide advice about sentencing; they do not control it." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1258 (11th Cir. 2015). Any notion that some guidelines may remain binding after *Booker* is foreclosed by the Supreme Court and is out of step with this Circuit's precedent too.

Even so, Henry suggests that *Booker*'s remedial holding only applies to guidelines that affect the "range" of the sentence, not those that affect the "kind of sentence."[2] But *Booker*'s holding unequivocally applies to both. The Supreme Court held that § 3553(b)(1) must be severed in its entirety—and that provision states that courts must "impose a sentence *of the kind*, and *within the range*" set by the Guidelines. *Booker*, 543 U.S. at 234 (emphasis added). This language does not leave room to carve out an exception for "kind-of-sentence" guidelines; § 3553(b)(1) explicitly included those guidelines too. So just as both types of guidelines were mandatory before, both are advisory now.

In fact, one of the Supreme Court's earliest post-*Booker* cases shows that the remedial holding applies to guidelines like § 5G1.3 that affect the kind of sentence

---

[2] Henry points to sentencing provisions related to probation, imprisonment, supervision conditions, fines, and restitution as examples of guidelines that determine the kind of sentence and not the sentencing range.

imposed. In *Gall*, the Court considered the applicability of § 5B1.1, a sentencing provision that authorizes probation in certain cases. *See* 552 U.S. at 58–59 & n.11; U.S.S.G. § 5B1.1. Like § 5G1.3, that provision comes into play at step eight of the Guidelines process, after the sentencing court has calculated the "guideline range in Part A of Chapter Five" corresponding to the defendant's Guidelines offense level and criminal history category. U.S.S.G. § 1B1.1(a)(7)–(8). The titles for both provisions address the imposition of a sentence. *Compare id.* § 5G1.3 ("Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment"), *with id.* § 5B1.1 ("Imposition of a Term of Probation"). And just like § 5G1.3(b), § 5B1.1(b) provides instructions about when a type of sentence "may not be *imposed.*" *Compare id.* § 5G1.3(b), *with id.* § 5B1.1(b) (emphasis added). The texts of the two provisions offer no reason to differentiate between them—so any rule that might render one binding as a "kind-of-sentence" guideline would have the same effect on the other.

Consistent with what we would expect—after all, *Booker* explicitly applies to guidelines affecting both the "kind of sentence" and the "range"—the Supreme Court affirmed in *Gall* that § 5B1.1 is advisory. The Court explained that the district court's chosen sentence of probation was not allowed under the Guidelines—"the Guidelines state that probation alone is not an appropriate sentence for comparable offenses"—and that it would need to be set aside "[i]f the Guidelines were still mandatory." *Gall*, 552 U.S. at 58–59. No matter. After *Booker*, "the Guidelines are only one of the factors to consider when imposing" a

10

sentence, so the district court was not required to follow the directive of § 5B1.1. *Id.* at 59. And because the reviewing court did not give due deference to the district court's "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence," it was wrong to overturn Gall's sentence of probation—even though it was not consistent with § 5B1.1. *Id.* at 59–60.

So under *Gall*, not only are the Guidelines advisory—it is *error* to treat them as mandatory. *Id.* at 51. Determining an accurate Guidelines recommendation is "the starting point and the initial benchmark." *Id.* at 49. That determination is required, so skipping it is procedural error. But if a sentencing court goes the other direction—and treats particular guidelines as mandatory instead of advisory—that too is error. *Id.* at 51. Given all that, holding that a district court *must* treat § 5G1.3(b)(1) as binding would require district courts to commit *Booker* error.[3]

Henry thinks otherwise. He insists that, whatever the Supreme Court may have said in *Booker*, this Circuit has said that the adjustment in § 5G1.3(b)(1) is mandatory when its requirements are met. *See United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009). But *United States v. Knight* cannot bear the weight he places on it—it merely established that a court must properly consider § 5G1.3(b) when deciding what the Guidelines recommend. There, the district court wrongly concluded that the defendant's situation did not meet the requirements of

---

[3] The dissent, in arguing that some guidelines remain mandatory, says that because "the Guidelines have the force and effect of law, sentencing courts may refuse to apply them only if they conflict with a higher source of law." Dissenting Op. at 33. That is true. But it is also true that the Supreme Court has already said that treating the Guidelines as mandatory is inconsistent with the Constitution. So district courts must treat the Guidelines as the starting point, but they now have the discretion to vary when imposing a sentence. *Gall*, 552 U.S. at 49.

§ 5G1.3(b)(1). *Id.* at 1329. But by the time of appeal, the government agreed with Knight that the guideline's requirements were met, and this Court accepted the noncontroversial concession of the United States that the sentencing court should have included an adjustment under § 5G1.3(b)(1) when calculating the Guidelines recommendation. *Id.*

Despite what Henry contends, that was not a holding that § 5G1.3(b)(1) somehow escaped the Court's holding in *Booker*. For starters, no party addressed *Booker* at all, much less argued that its holding did not apply to § 5G1.3(b)(1). Nor did this Court say so. All we did was fix an error in one court's application of § 5G1.3(b). But it would be remarkable to cut a gap of the sort Henry suggests without any analysis at all. In fact, on remand the district court got it right; it adjusted Knight's Guidelines recommendation as directed by § 5G1.3(b)(1), and *then* considered arguments from both parties about what the appropriate final sentence should be in light of the § 3553(a) factors. *See United States v. Knight*, 385 F. App'x 936 (11th Cir. 2010) (affirming Knight's revised sentence).[4]

The Sentencing Commission now explicitly directs courts to follow that same sequence. In response to *Booker*, the Commission amended the Guidelines and added a new provision, § 1B1.1(c), which instructs that after first determining

---

[4] Like Henry, the dissent contends that *Knight* and other cases from this Circuit already established some guidelines as mandatory. Dissenting Op. at 23–27. We find that puzzling. As we just explained, *Knight* was an ordinary procedural reasonableness case. The same goes for *United States v. Moran*, which simply described a provision of the Guidelines as mandatory in the sense that it was a required procedural step in determining an advisory Guidelines recommendation. *See* 573 F.3d 1132, 1138 (11th Cir. 2009). And as for *United States v. Pon*, that case incorrectly described our holding in *United States v. Sarras* and is also in conflict with an earlier case addressing the same provision. *See Pon*, 963 F.3d 1207, 1241 (11th Cir. 2020); *see also Magluta*, 418 F.3d at 1185.

12

"the kinds of sentence and the guideline range" (§ 1B1.1(a)) and then considering departures, policy statements, and commentary (§ 1B1.1(b)), district judges "shall then consider the applicable factors in 18 U.S.C. § 3553(a)." U.S.S.G. App. C, Amend. 741 (effective Nov. 1, 2010); *id.* § 1B1.1(c). This only confirms our conclusion: a court must first determine the guideline range and kind of sentence—which includes any adjustment under § 5G1.3(b)—before turning to the applicable factors in § 3553(a) and considering whether to vary from the advisory sentence.

The dissent, like Henry, sees things differently. *Booker*, in its view, held invalid the provision "that made the sentencing *range* produced by the Guidelines binding on the sentencing court" but did not touch "kind-of-sentence" guidelines at all. Dissenting Op. at 30–31. In fact, the dissent says that if a guideline affects the kind of sentence, *Booker* "provides no basis to disregard the mandatory language of the guideline." Dissenting Op. at 34. But as we have already explained, *Booker*'s remedial holding explicitly addressed both "range" and "kind-of-sentence" guidelines—meaning that just as both were mandatory before, both are advisory now. *See* 543 U.S. at 244–45; 18 U.S.C. § 3553(b)(1). We do not see how the dissent can contend that *Booker* "said nothing" about guidelines determining the kind of sentence. Dissenting Op. at 34.

Past its attempt to set apart kind-of-sentence guidelines, the dissent does not really attempt to align its two-tiered proposal with the Supreme Court's holdings in *Gall* and *Kimbrough*. Nor could it. Its reading of *Booker* is irreconcilable with how the Court has treated sentencing requirements in the years since that opinion. For example, the dissent says that "before and after *Booker*, provisions in the

Guidelines that neither enhance a defendant's sentence based on judicial factfinding nor mandate the imposition of a sentence within the guideline range are binding on sentencing courts." Dissenting Op. at 31. But the *Booker* Court itself rejected that kind of "Sixth Amendment violation only" sentencing structure. *See* 543 U.S. at 268 ("[W]e must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review."); *see also Lester v. United States*, 921 F.3d 1306, 1314 (11th Cir. 2019) (W. Pryor, J., respecting the denial of rehearing en banc) ("[A]s a matter of severability, the Court held that the Guidelines could not be applied as mandatory in *any* cases, even when their mandatory application would not violate the Sixth Amendment, because the resulting system would be structurally unsound and contrary to the intent of Congress."). *Booker* and the decisions that follow foreclose the possibility of a dual system where some types of guidelines are mandatory while others are not. *See, e.g.*, *Gall*, 552 U.S. at 59–60.

Nor does the dissent align its approach with the sentencing sequence set out in the Guidelines. Though it acknowledges the plain language of the § 1B1.1(c) amendment—which says that the § 3553(a) factors are considered last—the dissent seems to say that the prescribed order does not apply here, either because an example in the commentary to § 5G1.3(b) "specifically direct[s]" courts to apply § 5G1.3(b) after the § 3553(a) factors, or because the word "imposition" in § 5G1.3(b) demands that the provision be applied out of order. Dissenting Op. at 39–43.

14

We disagree.  First, only subsection (a) of § 1B1.1 allows for exceptions within its order.  *See* U.S.S.G. § 1B1.1(a) ("The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines . . . by applying the provisions of this manual in the following order, except as specifically directed.").  Though § 1B1.1 used to say that its specified order applied except as "specifically directed," after *Booker* the Commission divided § 1B1.1 into three subsections and moved the "specifically directed" language into subsection (a).  *See id.* App. C, Amend. 741 (effective Nov. 1, 2010); *see also id.* § 1B1.1(b)–(c) (the sentencing court "shall *then* consider" the factors in section (b) and "shall *then* consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole" (emphasis added)).  So § 1B1.1 only allows for exceptions to the order of the eight-step sequence set out in subsection (a) for determining the advisory Guidelines sentence—it does not allow for moving a guideline from (a) to (c), much less to moving it *after* (c), which was added to formalize the Guidelines' compliance with *Booker*.  *See id.* App. C, Amend. 741 (effective Nov. 1, 2010).  The Guidelines, in other words, do not provide for any possible "exceptions" to the (a), then (b), then (c) order directed in § 1B1.1.  The § 3553(a) factors always come last.

But even if exceptions to that order *were* allowed, we fail to see one that applies here.  Although the dissent says it has "explained" why courts are specifically directed to apply § 5G1.3(b) after the § 3553(a) factors, it is unclear which provision of the Guidelines the dissent believes constitutes a specific direction.  Dissenting Op. at 41.  Our own review reveals none.  For one thing, nothing in the text of § 5G1.3 or any other guideline "specifically direct[s]" courts

to apply § 5G1.3(b) after the § 3553(a) factors.  Nor does the commentary to § 5G1.3(b) cited by the dissent.  Of course, commentary in the Guidelines is authoritative.  *See Stinson v. United States*, 508 U.S. 36, 38 (1993).  But commentary that describes itself as an "example in which subsection (b) applies" cannot fairly be considered a specific direction to apply § 5G1.3(b) after the § 3553(a) factors.  U.S.S.G. § 5G1.3 comment. n.2(D).

Moreover, the commentary the dissent cites does not even address whether a court must consider the § 3553(a) factors before adjusting a sentence under § 5G1.3(b).  That omission makes sense—this part of the commentary was added before both *Booker* and § 1B1.1(c).  *See id.* App. C, Amend. 660 (effective Nov. 1, 2003).  So if there is any inconsistency between that commentary and the Sentencing Commission's post-*Booker* instructions for applying the Guidelines, the commentary is conflicted out—whether by *Booker* or by the new guideline.

The dissent also argues that the fact that the guideline uses the word "imposition" means courts must apply it after the § 3553(a) factors.  But that's just not so.  To begin, other guidelines that deal with the "imposition" of a sentence all come into play before the § 3553(a) factors.  *See id.* § 1B1.1(a)(8); *see also, e.g.*, *id.* § 5B1.1 ("Imposition of a Term of Probation"); *id.* § 5D1.1 ("Imposition of a Term of Supervised Release").  And the Supreme Court has already confirmed that a court considers the § 3553(a) factors after applying a guideline that provides for the "imposition" of a sentence.  *See Gall*, 522 U.S. at 59–60.  We must follow its lead here.  Applying § 5G1.3(b)(1) at the final step of § 1B1.1(a)—after a court has determined the Guidelines sentence but before it considers whether to vary from

16

that sentence in light of the § 3553(a) factors—is consistent with § 5G1.3(b) and the post-*Booker* amendments to § 1B1.1.[5]  We thus do not know what to make of the dissent's contention that this opinion "implicitly repeal[s]" § 5G1.3(b); we are merely applying § 5G1.3(b) in its proper place.  Dissenting Op. at 43.

Recognizing that its reading creates a conflict with the order laid out in § 1B1.1, the dissent attempts to solve that problem by saying that § 5G1.3(b), the more specific provision, must control over the general order provided in § 1B1.1.[6]  Dissenting Op. at 41–42.  That "solution," though, presents yet another problem. The general/specific canon only applies when "the attribution of no permissible meaning can eliminate the conflict."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012).  And we have already explained how § 5G1.3(b) is compatible with the sequence prescribed in § 1B1.1. Here, it takes more work to read in a conflict than to read it out.

One final note.  In *United States v. Gonzalez-Murillo*, we held that § 5G1.3(b)(1) is part of the guideline range.  *See* 852 F.3d 1329, 1336 (11th Cir. 2017).  That point is irrelevant to our opinion—after all, *Booker* says that both "kind-of-sentence" and "range" guidelines are advisory, so it does not matter for our purposes which way we categorize § 5G1.3(b)(1).  But that characterization is *critical* to the dissent, which proposes a sentencing framework that distinguishes

---

[5] The dissent, for what it is worth, agrees that § 1B1.1(a) is the "part of the guideline that would ordinarily dictate when to consider section 5G1.3."  Dissenting Op. at 40.

[6] The dissent states elsewhere that "section 5G1.3 and its commentary are not irreconcilable with section 1B1.1(c)."  Dissenting Op. at 43.  There, we agree—nothing in § 5G1.3 is irreconcilable with applying the guideline at the last step of § 1B1.1(a).

17

between guidelines relating to the range and guidelines relating to the kind of sentence.

Surprisingly enough, though it correctly states that *Gonzalez-Murillo* involved resentencing, the dissent relies heavily on another resentencing case, this one out of circuit, to support its view that § 5G1.3(b)(1) does not affect the guideline range. *See* Dissenting Op. at 28, 34, 36 (citing *United States v. Helm*, 891 F.3d 740, 743 (8th Cir. 2018)). But *Gonzalez-Murillo*—not *United States v. Helm*—is binding in this Circuit. And both cases involved sentence-modification proceedings, so any differences that make *Gonzalez-Murillo* less applicable here would also apply to *Helm*.[7] *See Helm*, 891 F.3d at 741. In any event, the Eighth Circuit itself has confirmed that § 5G1.3(b)(1) is only mandatory in the resentencing context. *See United States v. Carter*, 652 F.3d 894, 896–97 (8th Cir. 2011). Like every other circuit court to have considered the question, that court held that sentencing courts have the discretion to decline § 5G1.3's advice. *See id.*; *see also United States v. Parks*, 698 F.3d 1, 8 (1st Cir. 2012); *United States v. Ojeda*, 946 F.3d 622, 628 & n.4 (2d Cir. 2020); *United States v. Lynn*, 912 F.3d 212, 217 (4th Cir. 2019); *United States v. Ochoa*, 977 F.3d 354, 356 (5th Cir. 2020); *United States v. Lane*, 509 F.3d 771, 775–76 (6th Cir. 2007); *United States v. Nania*, 724 F.3d 824, 830 (7th Cir. 2013); *United States v. Armstead*, 552 F.3d

---

[7] Both *Gonzalez-Murillo* and *Helm* say that an adjustment under § 5G1.3(b)(1) is mandatory during resentencing. That causes no trouble, however. The Supreme Court has explained why a provision might be mandatory on resentencing even where it is advisory in the first instance; sentence-modification proceedings under 18 U.S.C. § 3582(c) "do not implicate the interests identified in *Booker*." *Dillon v. United States*, 560 U.S. 817, 828 (2010).

18

769, 784 (9th Cir. 2008); *United States v. Kieffer*, 681 F.3d 1143, 1167 (10th Cir. 2012); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).

In short, any suggestion that we treat an adjustment under § 5G1.3(b) as mandatory post-*Booker* is foreclosed by Supreme Court and Eleventh Circuit precedent. And no case from our Circuit requires the framework that Henry and the dissent ask us to create today. Courts must consider the advice of § 5G1.3(b)(1), of course, but they have no obligation to impose a sentence consistent with that section's directive.

### B.

Though the district court here was not bound to follow the Commission's advice in § 5G1.3(b)(1), it was required to properly consider the Guidelines' advisory recommendation. The parties dispute how that section should have been applied. But it is not necessary for this Court to decide this issue or remand for new proceedings because even if there was a Guidelines error, it did not affect Henry's sentence. *See United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006). This is not a case where the "record is silent" as to the district court's consideration of the Guidelines. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016). Quite the opposite—the district court told Henry exactly what it was doing. Because the district court stated on the record that it would have imposed the same sentence either way, that is "all we need to know" to hold that any potential error was harmless. *Keene*, 470 F.3d at 1349.

At Henry's sentencing hearing, the court did not expressly resolve the parties' competing arguments for how to implement § 5G1.3(b)(1). But it did say

19

that even under Henry's proposed method, a sentence of 108 months was the court's "judgment of a fair sentence under all the circumstances in this case." And if 24 months should have been deducted from the initial advisory range to reach the correct Guidelines recommendation—the government's view—the court would have still chosen an "upward variance" to end up at 108 months. The court's statements show that it both considered and understood the effect that accepting § 5G1.3(b)(1)'s advice would have had on Henry's Guidelines sentence. And because the district court would have imposed the same sentence even under Henry's approach, any error in when or how it considered § 5G1.3(b)(1) was harmless. *Id.*

Henry's 108-month sentence was also substantively reasonable. We review "all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Johnson*, 803 F.3d at 618 (quoting *Gall*, 552 U.S. at 41). Nothing prevents a court from varying from the Guidelines based on the § 3553(a) sentencing factors. *Gall*, 552 U.S. at 49–50; *see also* U.S.S.G. § 1B1.1(c), comment. (backg'd.) ("If, after step (c), the court imposes a sentence that is outside the guidelines framework, such a sentence is considered a 'variance.'"). Indeed, our post-*Booker* reasonableness review "takes into account the § 3553(a) factors as well as the advisory guidelines range." *Keene*, 470 F.3d at 1350. When deciding whether to vary from the Guidelines framework, a district court "may consider conduct that a probation officer already had considered in calculating the defendant's advisory guidelines range." *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015). Relying on that principle, we

20

have upheld the substantive reasonableness of an above-Guidelines sentence where the district court concluded that the defendant's string of burglaries warranted a stronger sentence than what the Guidelines recommended. *See Johnson*, 803 F.3d at 619–20.

After evaluating Henry's case, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)). The district court explained that it had considered the Guidelines, the presentence investigation report, and the arguments of counsel and had "evaluated the reasonableness of a sentence through the lens of" § 3553—just as it was required to do. As the court noted, Henry's advisory guideline range would have been higher but for the statutory maximum. The district court also considered Henry's characteristics and lengthy criminal history—specifically, the fact that Henry had been convicted of ten burglaries over the 23 years prior to the offense he was being sentenced for. Henry's presentence investigation report showed that at least three of those burglaries were armed and that Henry had previously been convicted of an assault. Given these facts and circumstances, it was at least reasonable for the district court to impose a 108-month sentence.

21

\*    \*    \*

A sentencing system where some guidelines are binding, and others are not, is not the one that the Supreme Court set out in *Booker*. District courts must consider the Guidelines, of course, but are not bound to follow their advice. Here, the district court needed to consider the effect of § 5G1.3(b)(1) on Henry's recommended sentence, but it was free to decline to impose a sentence consistent with that section's guidance. Because the sentence the court chose was procedurally and substantively reasonable, we affirm.

**AFFIRMED.**

WILLIAM PRYOR, Chief Judge, dissenting:

I disagree with the majority opinion on three grounds. The majority first concludes that our precedents leave us free to decide whether the provision of the sentencing guidelines at issue, section 5G1.3(b), is mandatory. But we have already held that it is mandatory. And even if we could decide the issue for ourselves, I would disagree with my colleagues' decision that the provision is advisory. Finally, I would conclude that the erroneous decision of the district court not to apply the provision was not harmless.

I respectfully dissent. I would vacate Henry's sentence and remand for the district court to adjust his sentence as section 5G1.3(b) requires. Henry should be given credit for the twenty-four months he has already served on another sentence.

*A.  We Have Already Held that Section 5G1.3(b) Is Mandatory.*

We have already rejected the majority's position. In *United States v. Knight*, 562 F.3d 1314, 1329 (11th Cir. 2009), we vacated a sentence when the district court did not apply section 5G1.3(b). We did so because "[t]he district court erred when it did not reduce Knight's sentence" under section 5G1.3(b). *Id.* at 1329. And we remanded to the district court with instructions to apply the adjustment dictated by the guideline's mandatory language. *Id.*

The majority points out the parties agreed in *Knight* that the district court should have applied section 5G1.3(b). Maj. Op. at 12. It reasons that our

23

pronouncement in *Knight* was not a holding because the government conceded that the district court should have applied the guideline. *Id.* But its suggestion that there exists a "government concession" exception to our prior-panel-precedent rule is incorrect.

Decisions involving party concessions fall into two categories. Sometimes, a party's concession prompts us to resolve an appeal without reaching a holding about how the underlying law works. *E.g.*, *Wilkes v. United States*, 289 F.3d 684, 687 n.6 (11th Cir. 2002) (awarding relief "[o]n the basis of these concessions, and not on the basis of a resolution of the legal issues"); *Garcia v. United States*, 278 F.3d 1210, 1212 (11th Cir. 2002) (explaining that "the parties have agreed" about a preliminary legal question and "assum[ing] for the purposes of argument" that they were correct). This first category of course does not constrain us to reach the same outcome in a later appeal; it is not a holding.

Other times, we point out the concession and express agreement with the parties' position after our own evaluation of the matter. *E.g.*, *United States v. Cain*, 433 F.3d 1345, 1346 n.1 (11th Cir. 2005) ("As [Cain] concedes, our existing precedent forecloses his argument."); *United States v. Olson*, 716 F.2d 850, 852 (11th Cir. 1983) ("The government's concession might well be the end of this case, but since the district court did not accept the government's concession filed with it and addressed the matter at length, we shall do so also."). Our own evaluation may

24

even lead us to reject the concession. *E.g.*, *King v. Moore*, 196 F.3d 1327, 1331 (11th Cir. 1999) ("The State's concession notwithstanding, we think that *Davis*'s rule still bars the claim."). This second category is obviously as much of a holding as any other decision.

*Knight* clearly falls into the second category because we explained why the government's concession was correct instead of resolving the appeal without reaching a legal conclusion. Far from relying on the government's concession, we stated without qualification that "[t]he district court erred when it did not reduce Knight's sentence" under section 5G1.3(b). *Knight*, 562 F.3d at 1329. We backed up that conclusion by quoting the guideline, explaining that the Bureau of Prisons could not credit Knight's time served, and determining that the state conviction was based on conduct that was used to enhance Knight's federal sentence. *Id.* Along the way, we pointed out that the United States conceded that the district court should have applied section 5G1.3(b). But in no way did our conclusion depend on that concession.

Nor is the majority correct that *Knight* is consistent with the view that the section 5G1.3(b) adjustment is advisory. *See* Maj. Op. at 12. Our instructions to the district court on remand dispel that view. We instructed the district court to apply the adjustment on remand, not to consider its application or rebalance the section 3553(a) factors. *Knight*, 562 F.3d at 1329. So if *Knight* was wrongly decided, it can

25

be corrected by our court only through an en banc decision. *United States v. Bazantes*, 978 F.3d 1227, 1243–44 (11th Cir. 2020).

*Knight*, by the way, is not the only post-*Booker* decision in which we have applied a guideline as mandatory. We held in *United States v. Moran* that "[s]upervised release is mandated whenever a sentence exceeds one year of imprisonment and may be imposed at the discretion of the district court 'follow[ing] imprisonment in any other case.'" 573 F.3d 1132, 1138 (11th Cir. 2009) (quoting U.S.S.G. § 5D1.1). And we recently held in *United States v. Pon* that another guideline imposed mandatory requirements on concurrent and consecutive sentencing. 963 F.3d 1207, 1241 (11th Cir. 2020) (construing U.S.S.G. § 5G1.2(d)).

The Supreme Court has not overruled or abrogated our precedents. The majority says the Court "has already said" that section 5G1.3(b) is advisory. Maj. Op. at 9–11. In *Gall v. United States*, it points out, the Court explained how to conduct reasonableness review of the defendant's probation-only sentence and acknowledged that his sentence was "not recommended under the Guidelines when the applicable Guidelines range is outside Zone A . . . as it is here." 552 U.S. 38, 58–59 & n.11 (2007) (citing U.S.S.G. § 5B1.1). But *Gall* predated our decisions in *Pon*, *Moran*, and *Knight* to treat as mandatory guidelines that restrict the kind of sentence, not the sentencing range, that the district court may impose. Even if the

26

majority is right that *Gall* means our precedents are wrong, *Gall* still does not provide an excuse to overrule our prior panel precedents. And *Gall*'s statement falls short of the weight the majority places on it. The Court never acknowledged that the Guidelines prohibited the kind of sentence Gall received; the prohibition of probation-only sentences for Zone D offenders like Gall appears in section 5C1.1(f) of the Guidelines, not the guideline the Court cited. *Compare* U.S.S.G. § 5C1.1(f), *with id.* § 5B1.1. Moreover, unlike in *Knight*, neither party raised the issue of whether section 5C1.1(f) fell outside the holding of *Booker*. That issue "merely lurk[ed] in the record," so *Gall* is "not to be considered as having" decided it. *Webster v. Fall*, 266 U.S. 507, 511 (1925). The majority accuses me of "not really attempt[ing] to align" my views with *Gall* or with *Kimbrough v. United States*, 552 U.S. 85 (2007). Maj. Op. at 14. But neither decision answered the question we consider here, and both decisions predated the trio of circuit precedents that contradict the majority's view.

The majority also rests its rejection of my position in part on our decision in *United States v. Gonzalez-Murillo*, 852 F.3d 1329, 1336–37 (11th Cir. 2017), which requires district courts to treat section 5G1.3(b)(1) as lowering a defendant's "guideline range" in one narrow circumstance: sentence-modification proceedings based on an amendment to the Guidelines, 18 U.S.C. § 3582(c)(2). In those proceedings, *Gonzalez-Murillo* held that courts must apply "all eight steps" of

27

section 1B1.1(a)—including any adjustment under section 5G1.3(b)(1)—"to determine the *amended* guideline range" for purposes of a sentence modification. 852 F.3d at 1336 (emphasis added).

The amended guideline range in a sentence-modification proceeding carries a significance that does not attach to the original guideline range. Unlike at sentencing, where the guideline range is advisory, a district court in a sentence-modification proceeding is forbidden to reduce the defendant's sentence beneath "the minimum of the amended guideline range" except in one limited circumstance not relevant here. U.S.S.G. § 1B1.10(b)(2); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010). Because *Gonzalez-Murillo* held that section 5G1.3(b)(1) applies in sentence-modification proceedings—even when it mandates a sentence lower than the guideline range produced by the first seven steps of section 1B1.1(a)—it also had to hold that section 5G1.3(b)(1) lowers the defendant's "*amended* guideline range *for purposes of*" a sentence-modification proceeding. *See* 852 F.3d at 1337, 1340 (emphasis added).

Although I have doubts about whether *Gonzalez-Murillo* was correct on this point, *see United States v. Helm*, 891 F.3d 740, 743–44 (8th Cir. 2018), the decision binds district courts to treat section 5G1.3(b)(1) as lowering the amended guideline range that applies in a sentence-modification proceeding. But its holding extends only to the effect of section 5G1.3(b)(1) on "the amended guideline range

28

for purposes of [section] 1B1.10(a)(1)," the guideline that governs the relevant sentence-modification proceeding. *Gonzalez-Murillo*, 852 F.3d at 1337. And we cannot extend its holding to the calculation of the original guideline range that applies at sentencing. As the next section discusses, such an extension would be contrary to the text and structure of the Guidelines. It would also contravene *Booker* by making a mandatory guideline govern a defendant's guideline *range*. And it would be inconsistent with our post-*Booker* decision in *Knight*, which held that section 5G1.3(b)(1) is mandatory at sentencing and so necessarily decided that this guideline does not affect the guideline range. *See* 562 F.3d at 1329.

### B. Section 5G1.3(b) Is Mandatory.

We are not only bound by our precedents to conclude that section 5G1.3(b) is mandatory when it applies; we should also reach the same result even without those precedents. The majority resists the straightforward application of the mandatory language in section 5G1.3(b)(1) by invoking the well-established principle that the Guidelines are "advisory" under *Booker v. United States*, 543 U.S. 220, 245 (2005). If the Guidelines are advisory, it contends, then section 5G1.3(b)(1) cannot have required the district court to adjust Henry's sentence. *See* Maj. Op. at 6–8. After all, it is hornbook law in the post-*Booker* era that after considering the Guidelines and the statutory sentencing factors, district courts may impose any appropriate sentence "within statutory limits," subject only to

29

"appellate review for reasonableness." *Pepper v. United States*, 562 U.S. 476, 490 (2011) (internal quotation marks omitted). I disagree with the majority's conclusion because it misunderstands which aspects of the Guidelines *Booker* held advisory.

To be sure, post-*Booker* references to the "advisory" Guidelines are ubiquitous in judicial opinions. *See, e.g.*, *Kimbrough*, 552 U.S. at 91 ("[U]nder *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only."). Indeed, "[v]irtually all of us are in the habit of distinguishing, in one way or another, between the 'mandatory Guidelines' that operated before *Booker* and the 'advisory Guidelines' that have operated since." *Lester v. United States*, 921 F.3d 1306, 1312 (11th Cir. 2019) (W. Pryor, J., respecting the denial of rehearing en banc). But sometimes idioms that are accurate in one respect "may be erroneous or inadequate in other respects." *Id.* The maxim "advisory Guidelines" is no exception.

*Booker* involved a Sixth Amendment challenge to the practice of judges finding facts at sentencing that increased a defendant's mandatory sentencing range under the Guidelines. 543 U.S. at 226–27. The Court held that this practice violated the Sixth Amendment right to a jury trial. *Id.* at 227–29 & n.1. To remedy the constitutional violation, a separate majority of the Court held invalid the provision of federal law, 18 U.S.C. § 3553(b)(1), that made the sentencing *range*

30

produced by the Guidelines binding on the sentencing court. *Booker*, 543 U.S. at 245. The Court also invalidated the provision that mandated *de novo* appellate review of departures from the guideline range, 18 U.S.C. § 3742(e). *Booker*, 543 U.S. at 259. And because the Court determined that making the guideline range mandatory in some cases and advisory in others would be contrary to the intent of Congress, it held that the guideline range is *always* advisory—even when mandatory application of the guideline range would not violate the Sixth Amendment. *Id.* at 266–67.

Although *Booker* held the guideline *range* advisory, it did not make every provision of the Guidelines optional. Both before and after *Booker*, provisions in the Guidelines that neither enhance a defendant's sentence based on judicial factfinding nor mandate the imposition of a sentence within the guideline range are binding on sentencing courts, so long as they do not conflict with a federal statute or the Constitution. As explained below, a mandatory adjustment under section 5G1.3(b)(1) is one such requirement.

To understand why some aspects of the Guidelines remain binding after *Booker*, it helps to review why all the Guidelines were ever considered binding in the first place. The Sentencing Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45 (1993). The United States Sentencing Commission promulgates the Guidelines using the

31

rulemaking procedures of the Administrative Procedure Act, *see* 28 U.S.C. § 994(x), which gives the Guidelines "the force and effect of law," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (internal quotation marks omitted). As the Supreme Court explained in rejecting a constitutional challenge to the Sentencing Commission, "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Mistretta v. United States*, 488 U.S. 361, 391 (1989); *see also id.* at 413 (Scalia, J., dissenting) (agreeing that the Guidelines "have the force and effect of laws").

The nature of the Guidelines as law is reflected in several provisions of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, which created the Sentencing Commission and empowered it to promulgate the Guidelines. A key provision in the Sentencing Reform Act was section 3553(b)(1), which purported to require courts to "impose a sentence of the kind, and within the range" prescribed by the Guidelines. 18 U.S.C. § 3553(b)(1). As we all know, *Booker* later held that section 3553(b)(1) could not require courts to impose a sentence within the range prescribed by the Guidelines. In addition to section 3553, the Act also provided a right of appeal to both the defendant and the government if a sentence "was imposed as a result of an incorrect application of the sentencing guidelines." *Id.* § 3742(a)(2), (b)(2). And it instructed the courts of appeals to "remand the case for further sentencing proceedings" if "the sentence was imposed . . . as a result of

32

an incorrect application of the sentencing guidelines." *Id.* § 3742(f)(1). Although

*Booker* held invalid the provision that made the guideline range mandatory, *id.*

§ 3553(b)(1), it did not affect section 3742(f), which requires federal courts to

correctly apply the Guidelines in all other respects. *See United States v. Crawford*,

407 F.3d 1174, 1178–79 (11th Cir. 2005).

Because the Guidelines have the force and effect of law, sentencing courts

may refuse to apply them only if they conflict with a higher source of law. *Cf.*

*Stinson*, 508 U.S. at 38 (holding that even the commentary to a guideline is binding

unless it conflicts with the Constitution, a federal statute, or the guideline itself).

*Booker* makes clear that, in the light of its constitutional holding, mandatory

application of the guideline range would be inconsistent with the otherwise

enforceable provisions of the Sentencing Reform Act. *See Lester*, 921 F.3d at

1314–15 (W. Pryor, J., respecting the denial of rehearing en banc). For that reason,

sentencing courts need not—indeed, they *must* not—treat the guideline range as

mandatory. *See United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). But

*Booker* neither requires nor countenances district courts treating every "shall" in

the Guidelines as a "may." Absent a conflict with a higher source of federal law,

sentencing courts must follow mandatory instructions in the Guidelines, which

"bind [them] in the exercise of their uncontested responsibility to pass sentence in

criminal cases." *Mistretta*, 488 U.S. at 391. And *Booker*'s holding about the

Guidelines that determine the "guideline range" said nothing about the Guidelines that determine the *kind of sentence* available.

To determine whether section 5G1.3(b)(1) is mandatory under *Booker*, we must decide whether that provision speaks to the guideline range or the kind of sentence available. 18 U.S.C. § 3553(b)(1). If it affects the guideline range, then district courts may of course vary from the sentencing range that section 5G1.3(b)(1) would provide based on the statutory sentencing factors. *See Gall*, 552 U.S. at 49–50. But if it instead dictates the kind of sentence available, then *Booker* provides no basis to disregard the mandatory language of the guideline.

Section 5G1.3(b)(1) "does not reduce the defendant's guideline range." *Helm*, 891 F.3d at 743 (emphasis and internal quotation marks omitted). Instead, it comes into play only "*after* the court has determined the applicable range." *Id.* (internal quotation marks omitted). And it tells courts which kind of sentence to impose—a concurrent sentence or a consecutive sentence. The text of section 5G1.3, the structure of the Guidelines, and the commentary to section 5G1.3 support this conclusion. *See United States v. Lange*, 862 F.3d 1290, 1294 (11th Cir. 2017) (explaining that the traditional rules of statutory interpretation govern our interpretation of the Guidelines).

The text of section 5G1.3 makes clear that the guideline does not govern the calculation of the guideline range. The guideline is primarily about which kind of

34

sentence, concurrent or consecutive, a court should impose. Subsection (a) requires imposition of a consecutive sentence if the defendant committed his offense while he was serving or about to serve a term of imprisonment for another offense. U.S.S.G. § 5G1.3(a). Subsection (b), as we know, requires courts to impose a sentence concurrent with an undischarged term of imprisonment for the same relevant conduct. *Id.* § 5G1.3(b)(2). Subsection (c) requires the federal sentence to be imposed to run concurrently with an anticipated state term of imprisonment for the same relevant conduct. *Id.* § 5G1.3(c). And subsection (d) gives a court discretion to impose a sentence "concurrently, partially concurrently, or consecutively" when the other three subsections do not apply. *Id.* § 5G1.3(d). Each of those provisions speaks to which kind of sentence a court may impose—concurrent or consecutive. None dictates how to calculate the guideline range. And subsection (b)(1) simply adjusts the sentence to account for the time already served, effectively making the federal sentence run concurrently with the time already served on the other sentence.

A second aspect of the text underscores the point that section 5G1.3 does not affect the guideline range: the guideline governs imposition of the sentence, not calculation of the guideline range. The title of the guideline is "*Imposition* of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment." U.S.S.G. § 5G1.3 (emphasis added); *see*

35

*also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 35, at 221 (2012) ("The title and headings are permissible indicators of meaning."). Subsection (b) of the guideline provides instructions about how "the sentence for the instant offense *shall be imposed*" in certain circumstances, not how to calculate the guideline range. U.S.S.G. § 5G1.3(b) (emphasis added). And the guideline requires district courts to "adjust *the sentence*" imposed on a defendant, not the defendant's guideline range. *Id.* § 5G1.3(b)(1) (emphasis added). In short, this guideline mandates a sentence adjustment for a certain class of defendants; it has nothing to do with calculating a defendant's guideline range.

The structure of the Guidelines confirms that section 5G1.3(b) plays no role in calculating the guideline range. The Guidelines provide eight steps for determining "the kinds of sentence and the guideline range" to be used at sentencing. *Id.* § 1B1.1(a). The first five steps provide instructions for calculating a defendant's offense level, and the sixth step explains how to determine the defendant's criminal history category. *Id.* § 1B1.1(a)(1)–(6). Step seven then instructs the sentencing court to "[d]etermine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above." *Id.* § 1B1.1(a)(7). At that point, calculation of the guideline range is complete. *See Helm*, 891 F.3d at 742. Finally, step eight instructs: "*For the particular guideline range*, determine from Parts B through G of Chapter Five *the*

36

*sentencing requirements and options* related to probation, imprisonment, supervision conditions, fines, and restitution." U.S.S.G. § 1B1.1(a)(8) (emphases added). Section 5G1.3, which appears in Part G of Chapter 5, is a "sentencing requirement[]" related to imprisonment. *Id.* And a sentencing court applies that requirement only when it "impose[s]" the sentence, *id.* § 5G1.3(b)—that is, *after* it has calculated the guideline range, determined any sentencing requirements, and selected a sentence based on the statutory factors, *see id.* § 1B1.1(a)(7)–(8), (c).

The contrary view, that section 5G1.3 determines the guideline range, would require section 1B1.1 to use "guideline range" in two different ways, and it would read the phrase "the kinds of sentence" out of the guideline altogether. This view would require the umbrella paragraph of section 1B1.1(a) to use "guideline range" broadly to mean the output of the entire operation of the Guidelines (other than the departure considerations in sections 5H and 5K). But that meaning conflicts with the narrower meaning required by step seven, which instructs courts to "[d]etermine the *guideline range*" from the sentencing table. *Id.* § 1B1.1(a)(7) (emphasis added). That inconsistent usage makes little sense. And interpreting "guideline range" broadly enough to sweep in guidelines about the kind of sentences available would leave the "kinds of sentence" language in the umbrella paragraph without independent meaning. I would reject this view because it

37

violates the presumption of consistent usage and the surplusage canon. Scalia & Garner, *Reading Law* §§ 25–26, at 170–179.

The commentary to section 5G1.3(b), which is authoritative, *see United States v. Burke*, 863 F.3d 1355, 1358 (11th Cir. 2017), also makes clear that any adjustment under that guideline must occur after the district court has calculated the guideline range and determined the appropriate total punishment to impose. Application Note 2(D) gives an example of a defendant with a guideline range of 12 to 18 months who has already served six months on a nine-month state sentence for an offense that was relevant conduct. *See* U.S.S.G. § 5G1.3 cmt. n.2(D). If "[t]he court determines that a sentence of 13 months provides the appropriate total punishment," the application note explains, then the court should impose "a sentence of seven months, . . . to run concurrently with the three months remaining on the defendant's state sentence." *Id.* The seven-month sentence, adjusted for the 6 months already served, achieves a total punishment of 13 months. *Id.* This example confirms that a district court must first determine the total appropriate punishment—up to the statutory maximum—and then adjust the sentence it imposes to account for time already served on the other sentence. *See id.*

Because section 5G1.3(b) does not affect the guideline range, the authority to vary from the guideline range provides no basis to refuse to adjust a defendant's sentence under that guideline. If the guideline applies, a district court may not

38

refuse to adjust the sentence to further the statutory goals of sentencing, *see* 18 U.S.C. § 3553(a). The district court must instead select an appropriate sentence after considering the guideline range and the statutory factors and then adjust the selected sentence to account for time served on the undischarged sentence for relevant conduct.

### C. The Refusal of the District Court to Apply Section 5G1.3(b) Was Not Harmless Error.

The majority contends that even if the district court erred in its application of section 5G1.3(b), its error was harmless because the district court would have imposed the same sentence even if it had applied the provision. Maj. Op. at 19–22. That position cannot be correct. The district court's contention that it would have given Henry the same sentence even if it had applied section 5G1.3(b) confirms that the district court misunderstood how the provision works.

By its terms, section 5G1.3 applies at the "*[i]mposition*" of the sentence. U.S.S.G. § 5G1.3 (emphasis added); *id.* § 5G1.3(b) ("the sentence . . . shall be *imposed*" (emphasis added)). Imposition of a sentence indisputably occurs after consideration of the statutory factors. 18 U.S.C. § 3553(a) ("The court, in determining the sentence *to be imposed*, shall consider [seven factors]." (emphasis added)). And section 5G1.3(b) assumes the existence of an already-determined sentence; it instructs sentencing courts to apply it by "adjust[ing] the sentence," not to take it into account when *determining* the sentence. U.S.S.G. § 5G1.3(b)(1).

39

In other words, the provision is a back-end adjustment to account for the time the defendant has already served on another sentence. U.S.S.G. § 5G1.3(b). But the district court appears to have understood it to come into play as part of his decision about the length of Henry's sentence. Because section 5G1.3(b) *must* make a difference when it applies, the district court underscored rather than remediated its error when it said applying section 5G1.3(b) would *not* make a difference in Henry's sentence. Far from rendering the error harmless, the statement that the district court would have imposed the same sentence even if it had applied section 5G1.3(b) confirms that it did not understand the guideline and undermines the idea that the error was harmless. And looking at the matter from Henry's perspective, the difference of twenty-four months was anything but harmless.

The majority reaches the opposite conclusion only by misunderstanding the point in the sentencing process at which section 5G1.3 applies. *See* Maj. Op. at 13–18. It points out that section 1B1.1 tells courts to determine "the kinds of sentence and the guideline range" before considering the section 3553(a) factors to determine the total punishment to be imposed. U.S.S.G. § 1B1.1(a)(8), (c); Maj. Op. at 13. That observation is the starting point for determining when to apply section 5G1.3(b), not the end: Section 1B1.1(a), the part of the guideline that would ordinarily dictate when to consider section 5G1.3, provides for exceptions to

40

its order of operations. *Id.* § 1B1.1(a) (providing that the order applies "except as specifically directed"). As I have explained, section 5G1.3(b) is just such an exception.

The majority supports its contrary conclusion by pointing out that the allowance for exceptions exists only in subsection (a) of the order of operations prescribed by section 1B1.1. Maj. Op. at 15. And it observes that the consideration of the statutory factors as directed in subsection (c) occurs after the consideration of the portions of the guidelines in the manner prescribed in subsection (a). *Id.* But that reading misses a fundamental point about the interaction of the three subsections of section 1B1.1.

Although subsections (b) and (c) prescribe the steps that follow subsection (a), they say nothing about what must occur as part of subsection (a). To make that point more concrete, the only provision that would ordinarily prescribe when section 5G1.3(b) must be considered is subsection (a), and that subsection is subject to an exception to its order. If a guideline falls within that exception and provides for its own consideration somewhere other than within subsection (a), nothing about subsection (b) or (c) contradicts that possibility.

Moreover, section 5G1.3(b) would come into play after consideration of the statutory factors even without the explicit allowance for exceptions in section 1B1.1(a). When two provisions conflict, the specific provision prevails. Scalia &

41

Garner, *Reading Law* § 28, at 183. Section 5G1.3(b) conflicts with the general order provided in section 1B1.1 for applying the guidelines. It tells district courts how to impose the sentence determined from the application of the statutory factors in a specific circumstance—when the defendant is subject to an undischarged state term of imprisonment that is relevant conduct to the offense of conviction. U.S.S.G. § 5G1.3(b)(1) (instructing courts to "adjust the sentence"). So even if section 1B1.1 did not explicitly provide for exceptions to its general rules, the specific rules of section 5G1.3(b) would control.

The majority next expresses its view that the commentary to section 5G1.3(b), including an example of its application, "cannot fairly be considered a specific direction" about how to apply section 5G1.3(b). Maj. Op. at 16. It does not explain why it holds this view. Commentary authoritatively dictates the meaning and application of the guideline unless it is inconsistent with or a plainly erroneous reading of the guideline. *United States v. Isaac*, 987 F.3d 980, 991 (11th Cir. 2021) (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Placing so much weight on the commentary makes sense: just like the guidelines themselves, amendments to the commentary are ordinarily subject to notice and comment and are submitted to Congress with other guidelines amendments. *See* U.S. Sent'g Comm'n, R. of Prac. & Proc. 4.1, 4.3 (2016); U.S. Sent'g Comm'n, R. of Prac. & Proc. 4.1, 4.3 (2007); U.S. Sent'g Comm'n, R. of Prac. & Proc. 4.1, 4.3 (1997). And this portion

42

of the commentary has repeatedly been subject to notice and comment and submission to Congress. *E.g.*, 57 Fed. Reg. 20,148, 20,159 (May 11, 1992) (submission to Congress); 68 Fed. Reg. 26,960, 26,975–76 (May 16, 2003) (same); 67 Fed. Reg. 42,308–09 (June 21, 2002) (notice and comment); 67 Fed. Reg. 77,532, 77,540–43 (December 18, 2002) (same). The majority is wrong to brush aside the commentary.

The majority additionally points out that the Sentencing Commission adopted section 1B1.1(c) more recently than it promulgated the portion of the commentary making clear when to apply section 5G1.3(b), and that the latter commentary predates *Booker*. Maj. Op. at 15. It suggests that the commentary is "conflicted out" either by *Booker* or by the new section 1B1.1(c). *Id.* at 15–16. I disagree.

There are at least two problems with that argument. As to *Booker*, the majority never explains its puzzling view that *Booker* told courts when in the sentencing process to consider section 5G1.3(b). And as to the idea that section 1B1.1(c) implicitly repealed section 5G1.3(b), "[r]epeals by implication are disfavored—very much disfavored"—and occur only when the earlier and later provisions are irreconcilable. Scalia & Garner, *Reading Law* § 55, at 327–28 (internal quotation marks omitted). And section 5G1.3 and its commentary are not irreconcilable with section 1B1.1(c). As I have just explained, subsection (c) says

43

nothing about when to apply section 5G1.3(b), and it provides only that courts should apply subsection (c) after working through subsections (a) and (b). Nothing about my reading of section 5G1.3(b) conflicts with that order.

The majority offers one more argument that misses the mark. It acknowledges that section 5G1.3(b) applies at the imposition of the sentence, and it responds that other guidelines in Chapter Five, which would ordinarily be considered as part of section 1B1.1(a)(8), "deal with the 'imposition' of a sentence." Maj. Op. at 16. That point is right enough, as far as it goes; many of the guidelines in Chapter Five use the word "impose" in the course of explaining when certain kinds of defendants are eligible for certain kinds of sentences. To the extent those guidelines do not provide otherwise, courts take their directions into account when considering the statutory factors to decide what total punishment to impose. *See* 18 U.S.C. § 3553(a)(4) (directing courts to consider "the kinds of sentence and sentencing range established" by the guidelines). Those guidelines, in other words, guide courts in *selecting* the total punishment. Section 5G1.3(b), in contrast to those guidelines, applies at the imposition of the sentence. It tells courts what to do *after* determining the total punishment through the application of the section 3553(a) factors. Tellingly, the majority never reckons with how a court should "adjust the sentence for any period of imprisonment already served" if the sentence has not yet been determined. U.S.S.G. § 5G1.3(b)(1). So the majority's observation

44

that other guidelines in Chapter Five use the word "impose" does not succeed in making section 5G1.3(b) indistinguishable from its neighbors.

I would reverse and remand for resentencing with correct application of section 5G1.3(b), so I respectfully dissent.