**NOT FOR PUBLICATION**

## In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 24-11031

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANDREW FRANCOIS MARTIN,

a.k.a. Drew

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20556-RKA-6

———————————————

Before JILL PRYOR, NEWSOM, and KIDD, Circuit Judges.

PER CURIAM:

After Andrew Francois Martin pleaded guilty to conspiracy
to commit Hobbs Act robbery, the district court sentenced him to

210 months' imprisonment with the sentence to run consecutively to a Florida robbery sentence that Martin was already serving. On appeal, he challenges the district court's decision imposing a consecutive sentence. After careful consideration, we affirm.

## I.

A federal grand jury returned an indictment charging Martin and others with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). The indictment alleged that the conspiracy ran from May 2016 through December 2017 and that the object of the conspiracy was to steal controlled substances, money, jewelry, and other property. For this crime, Martin faced a maximum sentence of 20 years' imprisonment. *See* 18 U.S.C. § 1951(a).

Martin pleaded guilty. He agreed that if the case had gone to trial, the government would have proven beyond a reasonable doubt that from May 2016 through December 2017 he conspired with co-defendants Palacio Valdes Farley, Joassaint Aristil, Jr., and others to commit Hobbs Act robbery.

He further agreed that the government would have proven beyond a reasonable doubt that three robberies occurred. Martin admitted to being involved in the first robbery, which occurred in May 2016 when members of the conspiracy stole marijuana from two drug suppliers, Justin Ziegler and William Merle, in Van Nuys, California. Members of the conspiracy arranged to purchase 25 pounds of marijuana from Ziegler and Merle at Ziegler's apartment. Before the meeting, Martin and Farley traveled together by airplane from Orlando to Van Nuys. During the meeting at

24-11031                Opinion of the Court                3

Ziegler's apartment, one member of the conspiracy left to retrieve money from his car to purchase the drugs. Moments later, he returned with another man, and they immediately began shooting. Both Ziegler and Merle sustained gunshot wounds. Members of the conspiracy stole more than 12 pounds of marijuana and fled from the apartment. On the day of the robbery, a contact messaged Martin that he had no more of a particular marijuana product. Martin responded that he was on his "way back down" to Florida "with it." Doc. 203 at 3.[1] The next day Martin flew back to Florida.

Martin admitted to committing a second robbery with Farley in April 2017 in Daytona Beach, Florida. While in the parking lot of a restaurant, they spotted Vladimir Gutierrez, a professional baseball player, with his wife Yanetsi Cordova. Farley and Martin noticed Gutierrez's jewelry and expensive car, determined that he was wealthy, and decided to rob him. They approached the couple with their guns drawn. They took Gutierrez's gold necklace, gold pendant, watch, and wallet. During the robbery, the restaurant owner came out with a gun. He shot at Martin and Farley, hitting Martin in the left leg. Martin fired back at the owner, and Farley and Martin fled from the scene.

Martin also admitted that co-conspirators committed a third robbery in December 2017 in Orange County, California. Farley and others robbed Stephen Keane, a drug supplier. During the robbery, they bound and gagged Keane and his wife and stole

---

[1] "Doc." numbers refer to the district court's docket entries.

marijuana, cash, jewelry, watches, and other items. Although Martin agreed that the government would have proven beyond a reasonable doubt that this robbery occurred, he did not admit to participating in it.[2]

The district court accepted Martin's guilty plea. At the time of his plea, Martin was in state custody serving a sentence imposed by a Florida court for the Daytona Beach robbery. In the state case, Martin was convicted of robbery with a firearm, aggravated assault with a deadly weapon, and possession of a firearm by a convicted felon and received a total sentence of 25 years' imprisonment. In the plea agreement in the federal conspiracy case, Martin acknowledged that the district court could direct that his federal sentence run consecutively to the state sentence.

Before Martin's sentencing hearing, a probation officer prepared an initial presentence investigation report ("PSR"). The PSR reported that the offense conduct included the Van Nuys robbery, the Daytona Beach robbery, and the Orange County robbery. It stated that Martin participated in the Van Nuys and Daytona Beach robberies but not the Orange County one.

The PSR also identified a fourth robbery as part of the offense conduct. It stated that in August 2016 Farley, Martin, Aristil, Emmanuel White, and others carried out a plan to impersonate

---

[2] In a recent opinion affirming Farley's and Aristil's convictions, we described each of the three robberies in greater detail. *See United States v. Nattiel*, No. 24-10954, 2026 WL 22065, at *3–7 (11th Cir. Jan. 5, 2026) (unpublished).

federal law enforcement agents; kidnap drug dealer Gregory Tisdale; and then gain access to a stash house used by Tisdale and Eric McNair, another drug dealer.

According to the PSR, to carry out this plan, the conspirators purchased a tracking device that they attached to Tisdale's Range Rover. Late one night, they used the device to track Tisdale to an apartment complex in Fort Lauderdale. They drove to the apartment complex and found Tisdale sitting in the Range Rover's driver's seat with a woman, Tiara Register, in the passenger's seat. Farley, Martin, and others ran to the Range Rover pretending to be federal agents who were arresting Tisdale. Farley pointed a gun at Tisdale and pulled him from the Range Rover's driver's seat to its backseat. Martin jumped into the driver's seat. Other co-conspirators, including White, pulled Register from the Range Rover and forced her into their vehicle.

Martin, with Farley and Tisdale in the backseat, drove the Range Rover to the apartment that McNair and Tisdale used as a stash house. Along the way, he picked up White. When they arrived at the apartment, McNair was outside. He spotted them and ran back inside the apartment. Tisdale attempted to flee. Farley and White shot at Tisdale and then left him for dead. Farley, Martin, and White chased McNair into the apartment. Tisdale, who was still alive, crawled away, hid under bushes, and survived.

Farley, Martin, and White found McNair inside the apartment. Farley killed McNair by shooting him. Farley, Martin, and

White stole approximately $30,000 in cash and half a kilogram of cocaine from the apartment.

After robbing the apartment, Farley, Martin, and White met up with the other co-conspirators, who still had Register as a captive. When Farley saw Register, he handed Martin a gun and told him to take her to a dead-end street near a canal and kill her. Register was later found dead with two gunshot wounds to the head.

After its detailed narrative of the four robberies that made up the offense conduct, the PSR computed Martin's offense level. To calculate the offense level, the PSR considered Martin's conduct in the May 2016 Van Nuys robbery, the August 2016 stash house robbery and murders of Tisdale and Register, and the April 2017 Daytona Beach robbery. It reported that Martin's total offense level was 43.

The PSR also recounted Martin's criminal history. Before he turned 21, Martin had sustained three separate adult criminal convictions in Florida state court for: (1) attempted burglary of an occupied dwelling, (2) carrying a concealed weapon, and (3) robbery without a firearm or weapon. Based on the sentences Martin received for these convictions, the PSR assigned him a total of seven criminal history points.

In addition, the PSR reported that Martin had 2017 Florida criminal convictions for robbery with a firearm, aggravated assault with a deadly weapon, and possession of a firearm by a convicted felon, all arising out of the Daytona Beach robbery. Although Martin received a total sentence of 25 years' imprisonment for these

crimes, the PSR assigned the sentence zero criminal history points because the sentence was imposed for conduct that was part of the instant offense. *See* U.S. Sent'g Guidelines Manual § 4A1.2(a)(1). With a total of seven criminal history points, the PSR assigned Martin to criminal history category IV.

Given a total offense level of 43 and a criminal history category of IV, the PSR reported that Martin's guidelines range was life imprisonment. Because the statutory maximum sentence for conspiracy to commit Hobbs Act robbery was 20 years, the PSR reduced his guidelines range to 240 months.

The PSR then addressed whether, under the Sentencing Guidelines, Martin's federal sentence should run concurrently or consecutively with his 25-year Florida sentence. The PSR concluded that because the Daytona Beach robbery was relevant conduct for the federal offense, § 5G1.3 of the Guidelines advised that the sentences should run concurrently.

Both the government and Martin objected to the PSR. The government challenged the PSR's application of the Guidelines. It asserted that because the Daytona Beach robbery was not relevant conduct for the federal offense, § 5G1.3 was inapplicable, and the Guidelines did not recommend a concurrent sentence.

The government alternatively argued that even if § 5G1.3 recommended a concurrent sentence, the court should exercise its discretion, and, based on the sentencing factors set forth at

18 U.S.C. § 3553(a),[3] impose a consecutive sentence. It urged the court to consider Martin's conduct from August 2016 when he robbed Tisdale and McNair's stash house and murdered Register. It argued that Martin was a "cold-blooded killer" who executed Register by shooting her twice in the head simply because she was an "innocent witness, who was in the wrong place at the wrong time." Doc. 293 at 8. It also pointed out that after murdering Register, Martin continued to engage in criminal activity with Farley when he participated in the Daytona Beach robbery and shot at the restaurant owner. The government argued that several of the § 3553(a) factors—including the circumstances of the offense as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public—supported imposing a consecutive sentence.

---

[3] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id*. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id*. § 3553(a)(1), (3)–(7).

Martin objected to the PSR's paragraphs that described the August 2016 robbery of Tisdale and McNair's stash house and the murders of Tisdale and Register. He argued that this incident did not qualify as relevant conduct for the federal conspiracy offense and noted that the factual proffer that was part of the plea agreement made no reference to this incident.

Martin further argued that the § 3553(a) factors did not support a consecutive sentence. He acknowledged that the court had discretion to impose a concurrent or consecutive sentence. He urged the court to impose a concurrent sentence so that he would not be "sentenced twice" for the Daytona Beach robbery. Doc. 301 at 5.

At the sentencing hearing, the district court considered the parties' objections. It began with whether the Daytona Beach robbery qualified as relevant conduct under the Guidelines. The court had presided over Farley and Aristil's criminal trial. Based on its observations from their trial, the court found that the Daytona Beach robbery was not part of the conspiracy charged in the case. It stated that Martin and Farley "spontaneously" came up with the plan to rob Gutierrez when they saw him exiting a restaurant "wearing a lot of very expensive jewelry and driving a very fancy car." Doc. 434 at 7. The court determined that this robbery was not relevant conduct for the federal offense, which involved a different conspiracy "to steal from drug dealers." *Id.*

After concluding that the Daytona Beach robbery was not relevant conduct, the court considered the government's

objections to the PSR's recommendation that under § 5G1.3 Martin's federal sentence should run concurrently with his state sentence. The court sustained the objection, stating § "5G1.3 just doesn't apply here, because the Daytona Beach robbery is a totally separate course of conduct." *Id.* at 8. But the court stated that it would consider the Daytona Beach robbery when weighing the § 3553(a) factors. In addition, because the Daytona Beach robbery was "not part of the instant offense," the court concluded that Martin's Florida sentence arising out of the robbery scored three criminal history points. U.S.S.G. § 4A1.2 As a result, Martin's criminal history score was 10, and he was in criminal history category V.

The court then addressed Martin's objection that it could not consider the August 2016 incident involving the stash house robbery and the murders of McNair and Register when calculating his guidelines range. The government introduced documentary evidence, including witness statements from Aristil and others, to establish that Martin participated in the planning and carrying out of the stash house robbery and shot Register. The court found that the government established by a preponderance of the evidence, but not beyond a reasonable doubt, that Martin was party to a conspiracy to rob the stash house and shot Register. After making these findings, the court announced that it would not consider this incident when calculating Martin's guidelines range but would consider the incident when weighing the § 3553(a) factors.

After making these rulings and resolving other objections, the court calculated Martin's revised guidelines range without

considering either the Daytona Beach robbery or the August 2016 stash house robbery and murders. It determined that Martin's total offense level was 29 and his criminal history category was V, which yielded a guidelines range of 140 to 175 months' imprisonment.

After calculating the guidelines range, the court returned to § 5G1.3. It reiterated that because the Daytona Beach robbery was "not a part of this conspiracy" and "not relevant conduct," § 5G1.3 did not apply. Doc. 434 at 14. But even if this provision recommended a concurrent sentence, the court explained that it retained discretion, which it intended to exercise, to impose a consecutive sentence. After stating that it intended to impose a consecutive sentence, it acknowledged that the parties had not yet addressed the § 3553(a) factors, saying "we'll get to that later." *Id.* at 24.

Later in the hearing, the court gave the parties an opportunity to address the § 3553(a) factors. The government requested a sentence of 240 months' imprisonment, the statutory maximum, with the sentence to run consecutively to Martin's state sentence. Both Register's mother and McNair's sister addressed the court, speaking about their deceased loved ones and how the murders impacted their families.

Martin's attorney asked the court to impose a sentence of 175 months, which was within the applicable guidelines range. He asked the court to consider that Martin had been controlled and manipulated by Farley. He also argued that Martin should receive a sentence below the statutory maximum because, unlike his co-defendants, he had accepted responsibility by pleading guilty.

When discussing the § 3553(a) factors, Martin's attorney acknowledged that the court had already stated that the federal sentence would run consecutively to the state sentence. The court said that it had considered giving a concurrent sentence, but it was "just not going to do it." *Id*. at 47.

The court gave Martin an opportunity to allocute. He apologized. He stated that he had spent the past seven years in state prison for the Daytona Beach robbery and described how, while incarcerated, he had participated in rehabilitation programs and was trying to improve himself.

After Martin spoke, the court announced that it was imposing a 210-month sentence, which would run consecutively to the state sentence. It addressed at length the § 3553(a) factors. It explained that Martin's criminal conduct in the charged conspiracy was "very serious." *Id*. at 49. It focused on the circumstances of the Van Nuys robbery, which included a dangerous shooting. The court found, based on the "vivid and gruesome testimony" from the trial of Martin's codefendants, that Martin was present and shooting during the robbery. *Id*.

The court then addressed Martin's history and characteristics. It reviewed his criminal history, including the Florida state court conviction for the Daytona Beach robbery. The court described Martin's conduct during this robbery, which included Martin shooting at the restaurant owner, as "very serious." *Id*. at 51. The court also discussed the August 2016 stash house robbery and murders of McNair and Register. It found Martin had shot and

killed Register.[4] It stated that the 210-month sentence was "driven mostly by [Martin's] criminal history, including the robbery in Daytona Beach and also the robbery in . . . Van Nuys and the two shootings in those two cases." *Id.* at 52. The court also explained that it "cannot ignore the . . . robberies of McNair and Tisdale and the killings of [] Register and [] McNair." *Id.*

The court discussed the need for specific deterrence and to protect the public from Martin's future crimes. It stated that he had engaged in a "repeated course of violent conduct" and observed that "several times state court judges have been lenient with [him], placed him on probation, and he has repaid that leniency by continuously violating the terms of his probation." *Id.*

The court also considered the need to provide for general deterrence, just punishment, and promote respect for the law. It stated that it was "important for people in our community to know that these crimes, especially when coupled with a criminal history category of this seriousness, are serious, that they are unacceptable, and that if you are caught and convicted, you will be punished." *Id.* at 53.

The court addressed the need to avoid unwarranted sentencing disparities. It explained that, unlike his codefendants, Martin had pleaded guilty. Given the plea, the court determined that

---

[4] The court found that Farley had shot and killed McNair.

he should receive a sentence shorter than the statutory maximum of 240 months.[5]

The court explained why it rejected Martin's request for a 175-month sentence. It found this sentence too short "given the extreme degrees of violence [and] repeated course of criminal conduct that [] Martin has displayed through the years." *Id.* at 53–54

After announcing the sentence, the court stated that even if its computation of the guidelines was wrong and even if it did not consider the August 2016 stash house robbery and murders of Register and McNair when weighing the § 3553(a) factors, it would have "come up with the exact same sentence." *Id.* at 57. It explained that it would have imposed the same sentence based solely on Martin's conduct in the Van Nuys and Daytona Beach robberies. After the court announced the sentence, Martin raised no objection to the court's findings of facts or the way the sentence was pronounced.

This is Martin's appeal.

## II.

"We review a district court's interpretation of the Sentencing Guidelines and application of the Guidelines to the facts de

---

[5] On the same day Martin was sentenced, the court sentenced Farley and Aristil. The court sentenced Farley to 240 months' imprisonment with the sentence to run consecutively to a separate 14-year sentence he was already serving. And it sentenced Aristil to 200 months' imprisonment with the sentence to run consecutively to a separate 122-month sentence he was already serving.

novo, and we review the district court's findings of fact for clear error." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

We review sentencing issues raised for the first time on appeal for plain error. *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019). To establish plain error, a defendant must show: (1) an error, (2) that is "plain," (3) that "affects substantial rights," and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003) (citation modified)

## III.

On appeal, Martin argues that the district court erred when it ordered his sentence to run consecutively, not concurrently, with his Florida sentence for the Daytona Beach robbery. He says that the district court erred in concluding that the Daytona Beach robbery was not relevant conduct in the federal conspiracy case and that the Sentencing Guidelines did not recommend a concurrent sentence. He also argues that the district court erred because it failed to give him an opportunity to allocute before announcing that it was imposing a consecutive sentence. We address each issue in turn.

## A.

When a defendant is sentenced to a term of imprisonment and is "already subject to an undischarged term of imprisonment," a court may direct that the new term of imprisonment will "run concurrently or consecutively" with the earlier sentence. 18 U.S.C.

§ 3584(a). As the Supreme Court has explained, judges have "discretion to select whether the sentences they impose will run concurrently or consecutively with . . . [sentences] that have been imposed in other proceedings, including state proceedings." *Setser v. United States*, 566 U.S. 231, 236 (2012).

The Sentencing Guidelines provide guidance to a district court faced with deciding whether to impose a concurrent or consecutive sentence. Section 5G1.3 states that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction" under § 1B1.3 of the Guidelines, "the sentence for the instant offense shall be imposed . . . to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b).

When a defendant is currently serving a state criminal sentence, a district court must consider § 5G1.3. *United States v. Henry*, 1 F.4th 1315, 1322 (11th Cir. 2021). But even when § 5G1.3(b) recommends a concurrent sentence, the district court retains discretion to order the federal sentence to run consecutively to the state sentence. After all, § 5G1.3, like all Guidelines provisions, is advisory. *See id.* at 1326 ("Courts must consider the advice of § 5G1.3(b)(1), of course, but they have no obligation to impose a sentence consistent with that section's directive.").

Here, Martin challenges the district court's application of § 5G1.3(b). As an initial matter, he asserts that the district court failed to conduct the analysis required under § 5G1.3. We disagree. The record reflects that the court considered § 5G1.3 and

concluded that it did not apply because Martin's state sentence arose out of the Daytona Beach robbery, which was not relevant conduct for the federal offense.

Martin also argues on appeal that the district court's § 5G1.3(b) analysis was flawed. He says that the Daytona Beach robbery qualified as relevant conduct under the Sentencing Guidelines and thus § 5G1.3(b) advised that his federal sentence should run concurrently with the state sentence.

We need not decide whether the district court erred in concluding that the Daytona Beach robbery was not relevant conduct for the conspiracy in this case and that § 5G1.3(b) did not apply because any error was harmless. It is well-established that when "a decision either way" on a sentencing issue "will not affect the outcome," it is unnecessary for us to decide it. *United States v. Keene*, 470 F.3d 1347, 1348 (11th Cir. 2006). We need not review a sentencing issue when "(1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020).

Here, the parties agree that the district court made a *Keene* statement. As Martin acknowledges, the court stated on the record that it would have imposed the same sentence even if it had resolved the guidelines issue in his favor. We thus must consider the substantive reasonableness of Martin's 210-month consecutive sentence.

"We review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Henry*, 1 F.4th at 1327 (citation modified). When reviewing the substantive reasonableness of a sentence, we consider the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). In imposing a sentence, the district court must consider all the factors set forth in 18 U.S.C. § 3553(a), "but it may give greater weight to some factors over others or even attach great weight to a single factor." *United States v. Gruskho*, 50 F.4th 1, 19 (11th Cir. 2022). We will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified).

It is well established that a court may vary from the Sentencing Guidelines based on the § 3553(a) factors. *See Gall*, 552 U.S. at 49–50. When deciding to vary from the Guidelines, a district court "may consider conduct that [it already] considered in calculating the defendant's advisory guidelines range." *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015). It also may consider uncharged conduct that was not relied upon in calculating the guidelines range. *United States v. Owens*, 96 F.4th 1316, 1321 (11th Cir. 2024). As we have recognized, "uncharged conduct can be directly germane to several § 3553(a) factors," including "the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, afford adequate deterrence to criminal

conduct, and protect the public from further crimes of the defendant." *Id.* (citation modified). A district court may consider uncharged conduct "so long as the government proves such conduct by a preponderance of the evidence." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015).

After evaluating the record in this case, we are not left with the definite and firm conviction that the district court committed a clear error of judgment when it weighed the § 3553(a) factors and imposed a consecutive, not concurrent, sentence. Here, the district court carefully, thoughtfully, and thoroughly addressed the § 3553(a) factors and explained why they supported a consecutive sentence. The court's findings from the sentencing hearing show that Martin committed three robberies that involved dangerous shootings. First, he participated in the Van Nuys robbery where Ziegler and Merle were robbed and shot. Second, he participated in the Daytona Beach robbery in which he and Farley robbed Gutierrez, and he shot at the restaurant owner. Third, he participated in the August 2016 robbery of McNair and Tisdale's stash house. After this robbery was complete, he shot Register twice in the head, killing her.[6] This evidence shows that Martin repeatedly participated in dangerous and violent robberies that involved shootings and in one instance murder. Given this record, it was

---

[6] On appeal, Martin has not challenged the district court's factual finding that the government proved by a preponderance of the evidence that he shot Register. And the district court clearly was permitted to consider this conduct when weighing the § 3553(a) factors. *See Wilson*, 788 F.3d at 1317.

reasonable for the district court to impose a consecutive sentence. Accordingly, any error in the district court's analysis of § 5G1.3(b) was harmless.

## B.

Martin also raises a second issue on appeal: that the district court erred by failing to give him an opportunity to allocute. "Allocution is the right of the defendant to make a final plea on his own behalf to the sentencer before the imposition of a sentence." *United States v. Prouty*, 303 F.3d 1249, 1251 (11th Cir. 2002). The Federal Rules of Criminal Procedure require that before imposing the sentence the district court "address the defendant personally" and allow him to "speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). When a district court imposes a sentence before giving a defendant an opportunity to allocute, we must vacate the sentence and remand so that the district court may give the defendant a chance to speak. *United States v. George*, 872 F.3d 1197, 1207–09 (11th Cir. 2017). On remand, the district court must give the defendant a chance to speak, but the defendant generally is not entitled to "an entirely new resentencing—he may not reassert or reargue any of his objections to the PSR, file new objections to the PSR, or file a new sentencing memorandum." *Id.*

Here, Martin argues for the first time on appeal that the district court erred at sentencing by denying him an opportunity to allocute before the court first announced that it would be imposing a consecutive sentence. But at the time the court made this

announcement, it was not imposing the sentence. And Martin does not dispute that after the court initially stated that it was going to impose a consecutive sentence, he was given an opportunity to allocute. Indeed, the record shows that he addressed the court before it imposed the sentence.

Martin nevertheless argues that when the court first announced that it intended to have his federal sentence run consecutively to his state sentence, he had no meaningful opportunity to allocute. Because Martin raises this issue for the first time on appeal, we review for plain error. *See Corbett*, 921 F.3d at 1037. He cannot show that any error was plain. Certainly, a district court plainly errs when it fails to give a defendant a chance to allocute before imposing a sentence. *See George*, 872 F.3d at 1207. But he has cited no published case holding that a district court errs when, before giving the defendant a chance to allocute, it announces its intent to impose a consecutive sentence but then allows him to allocute before it imposes the sentence. We thus cannot say that the district court plainly erred here. We affirm as to this issue.

**AFFIRMED.**